THE HEIMS BREWING COMPANY

*v.*

MARY FLANNERY *et al.*

*Filed at Springfield March 30, 1891.*

09:36 LRA 104

| | |
|---|---|
| 137 | 309 |
| 147 | 645 |
| 137 | 309 |
| 44a | 132 |
| 44a | 425 |
| 137 | 309 |
| 47a | 609 |
| 137 | 309 |
| 63a | 478 |
| 66a | 273 |
| 137 | 309 |
| 165 | 524 |
| 137 | 309 |
| 71a | 480 |
| 137 | 309 |
| 178 | 608 |
| 80a | 353 |
| 137 | 309 |
| 82a | 351 |
| 137 | 309 |
| 85a | 471 |
| 137 | 309 |
| f185 | 40 |
| 137 | 309 |
| 104a | 229 |

1. CONTRACT—*construed as to consideration.* A brewing company, for the purpose of increasing the sale of its own beer, entered into a written contract with a party engaged in the saloon business, by which the latter leased his saloon building to the former for five years, and obligated himself not to engage in such business within the term, nor, allow that business to be carried on in that particular locality on premises owned or controlled by him or which he might purchase within that time, and also not to sell his property to any one without a provision in the deed that the purchaser would not engage in the liquor traffic on the premises sold. The contract provided that the lessee should pay, for the whole time, $3000, in monthly installments of $50, on the first day of each month. It was also therein provided, that on default in the payment of any installment of rent for ten days, the lessee should, on request, give peaceable possession of the premises to the lessor, but for such cause the obligation to pay should not cease : *Held,* that the sum agreed to be paid was not merely for the rent, but was the consideration for all the stipulations and agreements on the part of the lessor, and that a determination of the demise for non-payment of the installments would not affect the lessee's liability to pay the residue of the stipulated consideration.

2. LEASE—*default in payment—rights of lessor.* In consideration of a lease of a building for a term of years, and other covenants of the lessor made for the benefit of the lessee, the latter agreed to pay the former $3000, in monthly installments of $50, and it was provided that for ten days' default in any monthly payment, the lessee, on the lessor's request, should surrender possession of the premises leased, but for such cause the obligation to pay should not cease. On default of payment the lessor took possession, and brought suit for the next installment maturing after taking possession : *Held,* that the surrender of possession for a default in payment on the demand of the lessor was not a rescission of the contract, but that the lessor, by action, might enforce payment of the remaining installments as they fell due, and that the lessee might enforce the covenants of the lessor.

3. CORPORATION—*ultra vires—estoppel.* If a corporation enters into a contract in excess of its corporate powers, and enjoys its benefits, it will be estopped, when sued on the contract, from appealing to the limitations imposed by its charter, for the purpose of escaping payment of the stipulated consideration.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of St. Clair county ; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a suit commenced before a justice of the peace, by Mary Flannery and Patrick Flannery against the Heims Brewing Company, to recover certain moneys claimed to be due and owing from the defendant to the plaintiffs at the time of the commencement of the suit, upon the following instrument :

"This article of agreement witnesseth, that Mary Flannery, and Patrick Flannery, her husband, have this day rented to the Heims Brewing Company of East St. Louis, St. Clair county, Illinois, in the present condition thereof, the one-story and basement frame saloon building situated on the east side of Fourth street, on parts of lots 24 and 25, block 3, Piggott's addition to the town of Illinois, (now East St. Louis,) * * * for the period of five years, from the first day of September, 1887, on the following terms and conditions, to-wit : For the use and rent thereof the said Heims Brewing Company hereby

promise to pay said Mary Flannery and husband, or to their order, $3000 for the whole time above stated, and to pay the same in installments of $50 each, at the end of each month, the first payment to be made October 1, 1887; that they will repair all injuries or damages done to the premises by him or them during their occupancy, or pay for the same; that all of their property, whether subject to legal exemption or not, shall be bound and subject to the payment of rents, and damages thereof; that they will take good care of the buildings and premises, and keep them free from filth, from danger of fire, or any nuisance, and from all uses forbidden in any fire insurance policy issued thereon, and protect, defend and indemnify the said Mary Flannery and husband from all damages and charges for such; that the houses and premises shall be kept clean, fairly treated, and left so; that in default of the payment of any one installment of rent for ten days after the same becomes due, they will, at the request of the said Mary Flannery, quit and render to them the peaceable possession thereof, but for this cause the obligation to pay shall not cease; and finally, at the end of said term they will surrender to said Mary Flannery and her husband, their heirs or assigns, the peaceable possession of the said house and premises, with all the keys, bolts, latches, and repairs, if any, in as good condition as they received the same, the usual wear and use, and providential destruction, or destruction by fire, excepted.

"The said lessee, and all holding under him, hereby engage to pay the rent above reserved, and double rent for every day he, or any one else in his name, shall hold on to the whole or any part of said tenement after the expiration of the lease, or its forfeiture for non-payment of rent, etc.

"It is further agreed, that in case of the building becoming untenantable from fire, the lessor will refund, *pro rata*, any rent paid in advance for the unexpired term, or in case of partial damage by fire, and lessor fails to repair within a reasonable time, then the lessee shall pay no rent until the building

is repaired or the lessee may terminate the lease; and it is further understood and agreed that said Mary Flannery or husband are neither to engage in the saloon business in the First Ward during the existence of this lease, neither will they allow any such business carried on in or on any other property which they may own in the First Ward, and that they will not sell any of said property, unless with the agreement that no liquor business will be carried on. This is also to apply to any property they may hereafter purchase during the continuance of this lease.

"It is hereby understood that the lessee is to pay the water license, according to the rules and regulations of the water department.

"In witness whereof, the parties have set their hands and seals to two copies hereof to be retained by each of the parties hereunto to receive one copy.

"Dated this first day of September, 1887."

Said instrument was executed by both parties under their hands and seals, and on the 1st day of December, 1887, by way of modifying said instrument, they executed under their hands and seals a further agreement, the terms of which were as follows:

"Whereas, Heims Brewing Company leased certain premises from Mary Flannery, and P. Flannery, her husband, on the first day of September, 1887, for a term of five years, in which it was stipulated that the said Mary Flannery and the said P. Flannery should not engage in the saloon or liquor business for a period of five years, nor permit any one else to do so on premises owned or controlled by them in the First Ward of the city of East St. Louis, Illinois, without the consent of the said Heims Brewing Company; and whereas, the said Mary Flannery, and P. Flannery, her husband, are desirous of engaging in the saloon business on lot 1, block 3, of the platted town of Illinois, situated in said First Ward, or renting said premises for that purpose, and have agreed to take all beer needed

in conducting a saloon on the lot mentioned, from said Heims Brewing Company:

"Now, therefore, this agreement witnesses, that the said Mary Flannery and P. Flannery shall have the right to conduct a saloon on said lot, or lease the same to any other person for that purpose, so long as they or such persons shall purchase all beer used in carrying on such business from the said brewing company, until the said five years shall have expired."

All the moneys due on said instrument prior to August 1, 1889, were paid by the defendant, the installments for May, June and July, 1889, having been sued for by the plaintiffs in the City Court of East St. Louis, and recovered of the defendant by the judgment of that court, and said judgment having been satisfied by payment. On the 17th day of August, 1889, the defendant, by its agent, tendered to the plaintiffs the keys of the premises described in said instrument, which the plaintiffs refused to accept, but on the 19th day of August, 1889, they served on the defendant the following notice:

"East St. Louis, Ill., *Aug. 17, '89.*
"*To the Heims Brewing Co.:*

"You are hereby notified that under and by virtue of the lease entered into between the undersigned and the Heims Brewing Company, on the 1st day of September, 1887, for the following described premises, to-wit: situated on the east side of Fourth street, on part of lots 24 and 25, block 3, Piggott's addition of the town of Illinois, (now East St. Louis,) * * * it is provided that in case of default in the payment of any one installment of rent for ten days after the same becomes due, the said Heims Brewing Company will, at the request of Mary Flannery, quit and render peaceable possession, or thereafter pay double rent for every day said premises are held over. That in consequence of your default in the payment of rent for the months of May, June and July, A. D. 1889, according to the terms of said lease, the said Mary Flannery has

elected, and does hereby request, that peaceable possession of said premises shall be surrendered, as provided by said lease, and in case of failure to comply with this request, then double rent will be exacted for every day after notice of this forfeiture, but if surrender is made under this notice, then $50 per month will be required.

MARY FLANNERY,<br>PATRICK FLANNERY."

On the same day on which said notice was served the defendant surrendered to the plaintiffs the possession of said premises, which was accepted by them, and since that time they have continued to hold possession thereof. On the first day of October following this suit was commenced before a justice of the peace, where the plaintiff recovered $50, the justice reciting in his docket that said judgment was for the "rent for the month of September, 1889." The cause having been removed to the Circuit Court of St. Clair county by appeal, a trial was had before the court, a jury being waived, and on such trial the issues were found for the plaintiffs, and their damages assessed at $50, and for that sum and costs the plaintiffs had judgment. Said judgment has been affirmed by the Appellate Court on appeal, and the judges of that court having awarded the defendant the necessary certificate of importance, the record is now brought here by appeal from the judgment of that court.

At the trial the plaintiffs gave evidence tending to show that prior to the execution of said lease they were keeping a saloon on said premises, the profits of which averaged $200 per month, and that the defendant wished to rent said premises for the purpose of placing a tenant therein who would sell its beer; that after the execution of said lease, the defendant had several occupants in possession, but that for a considerable portion of the time the premises were vacant, and that such was their condition at the time of the service of said notice to quit; that after the lease was modified the plaintiffs took all

their beer from the defendant, until May, 1889, at which time the defendant sold its brewery to some other party ; that since said surrender of possession, the plaintiffs had made no use of the premises, but had notified the defendant that, upon compliance with the terms of the lease, they would restore to it the possession, and on the trial a formal offer to the same effect was made, which the defendant refused to accept. The defendant read in evidence its articles of incorporation, that portion of said articles in which were stated the objects for which said corporation was formed being as follows :

"2. The object for which it is formed is to acquire, own and use all necessary property and means to prosecute and conduct the business of brewing and disposing of beer, with all such powers as shall be essential and incident to the convenient and successful operation of a brewery."

In the decision of the case, the court held the following propositions, at the instance of the plaintiffs :

"The court holds as a proposition of law, under the evidence in this case, that plaintiffs are entitled to recover in the action.

"The court holds as a proposition of law, under the evidence in this case, that defendant can not set up as a defense to the action its want of power to enter into the contract specified in the lease."

The following propositions which the defendant asked the court to hold as the law in the decision of the case were refused :

"1. The defendant had no power to lease the property in question for saloon purposes.

"2. The notice served on the defendant forfeited the lease when acquiesced by the defendant.

"3. It was competent for the lessors and lessee to terminate the lease by a surrender of the premises, and if there was a change of possession by mutual consent, that would amount to a surrender."

Mr. M. MILLARD, for the appellant:

The offer of the keys on the 17th of the month, coupled with their acceptance on the 19th, when the possession was actually delivered, and which has been retained by the plaintiff ever since, amounted to a surrender of the lease, which terminated its existence for all purposes.   A surrender may take place by operation of law—that is, without an instrument in writing.   *Baker* v. *Pratt,* 15 Ill. 568; *Dills* v. *Stobie,* 81 id. 202.

Even rent for the current month is lost when a surrender takes place, because there can be no apportionment.   Taylor on Landlord and Tenant, sec. 389.

The notice served on defendant was, in effect, a general forfeiture of the lease.   Plaintiff could not claim double rent without intending to forfeit the lease, for there must be a holding over before that right can exist.

The lease was *ultra vires.*   The defendant was incorporated to operate a brewery—not to conduct a saloon.   Morawetz on Corp. sec. 648.

Mr. MARTIN D. BAKER, and Mr. F. G. COCKRELL, for the appellees:

The contract was one the parties had the right to make. It did not violate any law, or any rule of public policy, or any law of morals.

This is not the case where a landlord wrongfully enters upon demised property, and evicts or renders the possession useless to the tenant.

The doctrine of surrender of a lease has no application to this case.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The principal controversy in this case arises upon the construction to be given to the provisions of the contract by which the plaintiffs leased to the defendant the premises in question.

The defendant, at the time said contract was entered into, was a corporation engaged in the manufacture and sale of beer, and the premises covered by the lease were and for a considerable time had been occupied and used by the plaintiffs as a saloon, where, as the evidence tends to show, large quantities of beer had been and were being sold at retail. The purpose of the defendant, in entering into said contract, as plainly appears both from the contract itself and from the surrounding circumstances, was to increase the sale and consumption of beer of its own manufacture. This was sought to be accomplished, first, by getting control of the premises where the plaintiffs had established and were carrying on a large saloon business, and, secondly, by obtaining from the plaintiffs a contract not to engage in the saloon business themselves, nor allow that business to be carried on in that locality on premises owned or controlled by them. This agreement was to run for the term of five years, and during that time the plaintiffs were prohibited from selling any of their said property without a provision prohibiting its use for carrying on the liquor business, and the same stipulation was made to apply to any property the plaintiffs might purchase during the term of said lease.

The consideration to be paid for all these various concessions made by the plaintiffs was $3000, payable in installments of $50 each, at the end of each month. This manifestly was agreed to be paid, not merely as rent for the premises demised, but as the consideration for all the stipulations and agreements on the part of the plaintiffs contained in the contract. It was accordingly stipulated that a termination of the demise for non-payment by the defendant of the installments as they should fall due should not affect the defendant's liability to pay the residue of the stipulated consideration.

The provisions of the contract on this subject are, that in default of the payment of any one installment of rent for ten days after the same shall become due, the defendant will, at

the request of the plaintiffs, quit and surrender to them peaceable possession of the demised premises, "but for this cause the obligation to pay shall not cease." A subsequent clause provides for the payment of double rent in case the defendant should hold over after the termination of said lease or its forfeiture for non-payment of rent.

When all the provisions and circumstances of said contract are taken into consideration, there seems to be no reasonable doubt as to the intention of the parties that, the mere surrender of possession of the building leased, though made upon demand by the plaintiffs based upon a default in the payment of an installment of the rent, should not terminate said contract altogether, but only the defendant's right to the possession of the building leased, thus leaving all the other provisions of the contract, as well as the defendant's obligation to pay the stipulated consideration, in full force. The agreements on the part of the plaintiffs unaffected· by the surrender, and which the defendant may still enforce constitute a substantial and material part of the consideration of the defendant's covenant to pay the $3000, and it is not for the defendant to insist that a forfeiture, by reason of its own default, of only its leasehold interest in said building, leaving all the other provisions of the contract valid and enforceable, shall be held to work, in its favor, a total rescission.

The parties have covenanted that the obligation on the part of the defendant to pay the stipulated consideration should not cease by reason of the surrender of the building. This was a contract which violated no principle of law, and which the parties were clearly competent to make, and no reason is apparent why it should not be enforced.

The defense of *ultra vires* can not avail the defendant. Even admitting that entering into said contract was in excess of the defendant's corporate powers, yet having entered into said contract and enjoyed its benefits, it should be estopped

to appeal to the limitations imposed by its charter for the purpose of escaping payment of the stipulated consideration. *Bradley* v. *Ballard*, 55 Ill. 413.

We think the case was properly disposed of by the Appellate Court, and its judgment will be affirmed.

*Judgment affirmed.*