## LOGAN v. GREEN.
### No. 3865.

Court of Civil Appeals of Texas. Amarillo.
Sept. 14, 1932.

Rehearing Denied Oct. 12, 1932.

Levens, McWhorter & Howard, of Lubbock, for appellant.

Bean & Klett, of Lubbock, for appellee.

MARTIN, J.

In December, 1927, appellee, Wm. D. Green, made a lease contract with one W. R. Bettes, leasing him certain real estate in the town of Lubbock upon which there was then being constructed certain improvements, for a term of five years from the completion of said improvements. The consideration for said lease was the sum of $18,000, payable monthly in advance, in the sum of $300 per month, $900 of which was paid at the time the lease was entered into, $300 of which amount was to apply on the first month's rent, and $600 of which was to apply on the rent for the last two months of the term. The tenant, Bettes, went into possession about March 1, 1928.

In March, 1929, W. R. Bettes, the tenant, sold his business and certain fixtures and equipment not necessary here to detail, together with his lease contract, to appellant herein, who went into possession and paid the rent to appellee until September 1, 1931, at which time he defaulted in the payment of the September rent and the three months following this date, with the exception of a $69 payment.

On the 26th day of December, 1931, the appellee sued appellant in the district court of Lubbock county, Tex., for all rents that had accrued and rents to accrue until the end of the term, which was March 1, 1933, and for foreclosure of his landlord's and contract lien upon certain fixtures and equipment, the description of which we omit as immaterial to any issue in this case, and also for possession of the premises.

This petition alleged that, as part of said transaction, the said Bettes also transferred and assigned to the said Logan the lease contract between himself and plaintiff, and the said Logan purchased the same and agreed in writing that he took said lease contract subject to the provisions thereof, and "agreed to carry out the obligations therein imposed upon the said W. R. Bettes," and also agreed that a landlord's lien and contract lien existed upon the property by the said Logan from the said Bettes in favor of plaintiff to secure the unpaid rentals. Appellee prayed for judgment against appellant in the sum of $5,031, "being the full rentals for the entire term," and in the alternative he prayed that, "if he be not allowed to recover rentals for the entire term, that nevertheless, he be granted judgment for $1,131.00 due as rentals to December 1, 1931 and for rentals up to the date of judgment herein at the rate of $300.00 per month, with foreclosure of liens, and thereafter to the end of the term of the lease to W. R. Bettes at a reasonable value, which he alleges is $200.00 per month."

The appellant answered by general denial, and by way of special answer and cross-action pleaded the contract of sale between Bettes and Logan in hæc verba, the material parts of which we shall presently quote. He further alleged payments up to and including the month of August, 1931, of $300 per month and a $69 payment thereafter, and specially pleaded that he had been assigned the $600

120

which was the payment of the last two months' rent of the term, in the contract between himself and Bettes. He further pleaded a release by appellee of the W. R. Bettes estate, Bettes himself having died, of all liability under the original contract sued on, in consideration of the sum of $900 paid by the Bettes estate to appellee, alleging that, by the execution of said release, defendant became released from all the terms and conditions of the contract entered into between the plaintiff and the said Bettes. He pleaded other items of damage which have passed out of the case under the record as presented and is not necessary here to state. The prayer of the defendant was that plaintiff take nothing by his suit; that the $900 paid by the executors of said estate be applied to any accrued rentals; that the $600 paid by the said Bettes to apply on the last two months of the rental contract be advanced and applied on the last two months prior to the wrongful termination of said lease contract by the plaintiff, if any.

By a supplemental petition, and in reply to appellant's original answer, appellee pleaded, among other things, that, under the contracts existing between the three parties already referred to, appellant, Logan, became the principal and W. R. Bettes the surety only for the payment of the rents; that plaintiff had the right to demand of either or both the payment of all rents and had a legal right to release the surety, Bettes estate, and that, though the estate of W. R. Bettes has been released, appellant has not been and is still under obligations to pay the rent, since he assumed the obligations thereof to this plaintiff in his contract with Bettes.

The only issue submitted to the jury was an inquiry as to whether or not the appellee, Green, prior to filing his suit, requested the appellant to pay his past-due rents, to which the jury answered, "Yes."

Thereupon, on the 22d day of January, 1932, the court entered judgment against appellant in favor of appellee for the sum of $2,050, with a foreclosure of his lien, and for possession of the premises in controversy.

Since this case will turn upon the construction of the said lease contracts, we deem it necessary to here reproduce their material portions in hæc verba:

"State of Texas, Lubbock County.

"This agreement witnesseth, that W. D. Green, here called owner, has leased and let to W. R. Bettes, here called tenant, for a term of Five Years, that certain real estate situated in the original town of Lubbock, being Lots Nine (9) and Ten (10) in Block One Hundred Thirty Four (134), together with certain improvements that owner will erect thereon, and which it is contemplated will be completed by March 1st, 1928.

"And the said W. R. Bettes, agrees to become the tenant of said owner of the premises above described for said term of Five years, and as rentals, agreed to pay to said W. D. Green, at Lubbock, Texas, Eighteen Thousand Dollars, ($18,000.00), the same payable monthly in advance; that is to say:— there shall be paid at date of taking possession of the premises the sum of $900.00, which will pay the rental for the first month of the term, and for the last two months of the term; and thereafter on the first day of each succeeding month of the term (except the last two months) there shall be paid $300.00. * * *

"The tenant is given the privilege of subletting or subleasing said premises or any part thereof, for the purposes only that said tenant acquires hereunder; but the tenant shall continue to be liable for all the rentals for the full term. And in this connection it is specially agreed that at any time the tenant is behind with any monthly rental, he shall not collect from subtenants or subleasees, except for the purpose of turning the collections to the said Green to the amount owing him at that time.

"The owner is here granted and given a landlord's lien and contract lien on all property of the tenant on and in the premises at any time rentals are delinquent to secure the payment of such delinquent rentals, as well as those accrueing thereafter.

"Possession of the premises shall be delivered to and accepted by the tenant as soon as the improvements are completed, which it is contemplated will be by March 1st, 1928; and to guarantee that said tenant will consum[m]ate this contract and enter into and upon the premises and prosecute business thereon, the tenant has this day placed with a copy of this contract, in escro[w], a cashier's check, payable to order of W. D. Green, for $900.00, which shall be applied as three months' rentals if the tenant shall consum[m]ate the agreement as above set forth; but if he shall fail or refuse to take the premises, and otherwise consum[m]ate the transaction, he shall forfeit said $900.00 to said W. D. Green, and same shall be turned over to him by the escro[w] holder.

"It is further agreed as one of the conditions upon which this lease is made, that if the tenant shall make default in the payment of any monthly installment of the rental when due, or in the performance of any of the covenants or agreements on the part of the tenant to be by him done or performed, then and from thenceforth this lease shall be ended and determined as to him and all persons holding under him, and all his rights shall be forfeited and lapsed, as fully as if this lease had expired by lapse of time, and the full lease money hereunder shall immediately become due and payable; and the owner shall at once have all the rights of reentry upon

said premises, without becoming liable for damages, or guilty of a trespass.

"Witness our hands at Lubbock, Texas, this the 24th day of December, 1927.

"Wm. D. Green—W. R. Bettes."

"State of Texas, Lubbock County.

"Contract of Sale
"W. R. Bettes to J. B. Logan.

"W. R. Bettes is conducting a wholesale and retail business at the corner of Texas Avenue and 13th Street, under the name of W. R. Bettes Oil & Tire Co., and he is also the owner of a lease contract on Lots Nine (9) and Ten (10) in Block One Hundred Thirty Four (134) of the Original Town of Lubbock, Lubbock County, Texas, upon which said business is conducted. Said lease contract was made with the owner, Wm. D. Green, and is more fully shown by the original, with which the parties hereto are acquainted. The lease was executed on December 24, 1927, and runs for a period of five years after the completion of the building on said premises.

"The said W. R. Bettes hereby bargains, sells and delivers to the said J. B. Logan all of the retail business owned by the said W. R. Bettes on said premises, except as herein stated, at the prices and upon the terms herein stated. * * *

"The said W. R. Bettes hereby transfers and assigns the aforesaid lease contract to the said J. B. Logan, and the said J. B. Logan takes said lease contract subject to the provisions thereof and agrees to carry out the obligations therein imposed upon the said W. R. Bettes.

"Under said lease contract, the said W. R. Bettes has paid the sum of $600.00 in advance, and the said J. B. Logan is to receive said $600.00 in accordance with said contract. And in consideration therefor, the said W. R. Bettes is to have the use and possession of the warehouse on said premises, (now used for storage of Quaker State oil) and the Northwest corner of the office in said building, without cost to him for a period of twelve months from April 1, 1929, and during the remainder of the unexpired lease the said W. R. ——— is to have the use and possession of said warehouse and said office space, for which he is to pay the said J. B. Logan the agreed rental of $50.00 per month in advance on the first day of each month for the remainder of the term. If for any unavoidable circumstance, not now foreseen, the said W. R. Bettes should have to vacate the said warehouse and office space, and not be permitted to use it before the expiration of said twelve months, the said J. B. Logan shall thereupon reimburse the said W. R. Bettes for the unexpired term of the first twelve months mentioned, at the rate of $50.00 per month.

"It is understood that this sale and lease does not cover W. R. Bettes's wholesale business or his contract for distribution of Quaker State oil or his franchise on Mohawk tires and tubes.

"The said J. B. Logan does not buy and will not be entitled to use the trade name or firm name of 'W. R. Bettes Oil & Tire Co.'

"The said J. B. Logan shall not remove or alter the Quaker State electric sign now attached to the building on said premises without the written permission of the said W. R. Bettes.

"It is understood as one of the conditions of this contract that the said J. B. Logan will have and offer for sale Quaker State oil to the retail trade, and that the said W. R. Bettes, as long as he has the contract for the sale of Quaker State oil, will sell said oil to the said J. B. Logan at the same price he sells other retail dealers. And that should the said J. B. Logan fail or refuse to offer and keep for sale said Quaker State oil, this contract as to use and possession of warehouse and office space shall be null and void, at option of W. R. Bettes, and unearned rental for remainder, if any, of the first year shall be refunded by Logan to Bettes.

"It is also understood that the aforesaid lease contract under Wm. D. Green fixes a landlord's lien on certain of the foregoing property, and the said J. B. Logan purchases said property with that understanding.

"It is further agreed that should the buyer fail or refuse to keep and perform any covenant and condition of this contract in the time and manner stated, then the seller shall have the right to declare the aforesaid transfer and assignment of said lease as null and void and enter and take possession of said premises without being liable for trespass or other damages and without prejudice to any other remedy he may have.

"Witness our hands this the 20th day of March, 1929.

"W. R. Bettes  [Seller]
"J. B. Logan  [Buyer]"

We regard the three following legal issues as being properly presented for our consideration by the briefs on file: (1) Appellant contends that the contract quoted above between Bettes and Logan constituted a subletting and not an assignment, and therefore no cause of action existed in favor of appellee against appellant for rents, and the court erred in construing said contract as an assignment and entering, as he did, a personal judgment against appellant; (2) that, conceding that said contract last mentioned constituted an assignment so as to make appellant personally liable, still the court was in error in entering judgment as he did for the unexpired rental period; (3) that the $600 payment already referred to should have been credited at all events on any judgment rendered, since appellant had obtained an assignment of the right to said item from the

original lessee to be applied on the rentals due.

■ We do not purpose to enter into a discussion of the subtle niceties of and distinctions between an assignment and sublease. The question has been ably discussed, and the distinction between the two clearly pointed out by Judge Dibrell in the case of Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084. Under our view of the case, whether the, instrument in question belongs to either or neither of the classes mentioned is immaterial, since by its terms appellant agreed to carry out the "obligations therein imposed upon said W. R. Bettes," thus creating a privity of contract between appellant and appellee.

■ It may be said in general terms that a sublessee is not personally liable to the original lessor for rent, because an instrument which on its face is no more than a subleasing creates neither a privity of estate nor of contract between the parties. It would not, however, follow that, because the instrument was in such form, there could not be added to it the obligation to pay rent of the character noted above. To so hold would be to exalt the shadow above the substance. It may therefore be admitted that the instrument in question is not in the form of an assignment, but a mere subletting, without affecting the real question at issue, which is the right of appellee to take a personal judgment for rent against appellant as he did in this case. This is made plain, we think, by the language and reasoning of the following authorities: Foucar v. Holberg, 85 Ark. 59, 107 S. W. 172.; Tinsley v. Metzler (Tex. Civ. App.) 44 S.W.(2d) 820; Springer v. De Wolf, 194 Ill. 218, 62 N. E. 542, 56 L. R. A. 465, 88 Am. St. Rep. 155; Mann v. Ferdinand Munch Brewery, 225 N. Y. 189, 121 N. E. 746; 36 C. J. 379; 35 C. J. 996.

Believing that the instrument in question creates a privity of contract between the parties and an obligation binding on appellant to pay the rent in question, we overrule the first contention.

The appellant argues that the trial court construed the instrument in question as an assignment, and rendered judgment accordingly for both past-due and future rents for the full rental period, and that, admitting his construction is correct, rents to accrue could not be recovered.

It will be noted that the contract between the original parties in substance provided for surrender of possession and the payment of all lease money to the end of the term in case of default in the payment of any monthly installment of rent. This provision was pleaded and proven.

Construing a similar provision, it was held in the case of Grommes v. St. Paul Trust Co., 147 Ill. 634, 35 N. E. 820, 822, 37 Am. St. Rep. 248, there was nothing unreasonable in the agreement of a lessee to completely indemnify his lessor for any injury which might arise to him by the lessee's breach of his own agreement. It can make but little difference whether the sum to be paid be called rent or damages.

■ We know of no law that would make such a provision in a contract void. It is, in our opinion, a valid, enforceable one.

Of course, under proper pleadings and proof, this amount might be reduced or entirely abrogated by evidence of a reduced or of no rental value of the premises in controversy. The only question, apparently, presented here is the invalidity of such provision. However, we note that the pleading and proof showed in round numbers eighteen months of the rental period due; that is, from Sept. 1, 1931, to March 1, 1933. The appellant was still in possession of the premises at the date of the trial, January 22, 1932. The appellee testified its rental value was from $150 to $200 per month for the months to run. Calculating the rent at $300 per month to the date of the trial and $200 per month to the end of the rental period, and subtracting therefrom the $600 hereinafter mentioned, we have an amount greater than that named in the judgment, or, calculating the full period of eighteen months at $300 per month, and subtracting therefrom the items claimed as an offset by appellant in his pleadings, we would still have an amount somewhat greater than awarded appellee by the court.

In the state of this record, it is impossible for us to know what construction the court placed upon the contract or what calculations he used in arriving at the figure named in his judgment. Nor have we any way of knowing upon what pleading he based this judgment. This, of course, has caused us a great deal of additional work, but we have arrived at the conclusion that, whatever basis he used, the amount rendered by him as the amount owing by appellant was less than that which he actually owes. Therefore any error he may have made apparently inured to the benefit of appellant, and was harmless.

What has already been said disposes of appellant's third contention, which is to the effect that the $600 named in the contract already quoted should have been credited on any judgment rendered. If appellee had recovered for the full rental period, his judgment would have been for $5,031. It being for only $2,050, he not only allowed this credit, but many others, the exact nature and amount of which we cannot determine, any further than to say that, since appellant got all at the hands of the court he was entitled to, he is in no position to complain, and,

since the appellee is not complaining, the above disposes of the question presented.

After the death of Bettes, his legal representatives, in consideration of the payment of $900 cash, procured the release of the Bettes estate from liability under the original contract quoted above. Two contentions are made by appellant with respect to this, if we understand them, one to the effect that the $900 paid by the Bettes estate should have been credited on the judgment rendered herein and the other that the release had the legal effect of relieving appellant from liability.

[redacted] The contracts quoted are of such character as to create between appellee and Bettes the relation of principal and surety. Gray v. Tate (Tex. Civ. App.) 251 S. W. 820. A lessor may release such surety without releasing the principal. 16 R. C. L. p. 851.

[redacted] Without consuming space in further discussion, suffice it to say that in our opinion the liability of appellant remained unaffected by the instrument in question, and what has already been said is sufficient, we think, to demonstrate that he has already received credit for the $900, though it seems apparent that under a proper construction of the transaction he is not entitled to same, since this was a matter with which he was in no way connected, and was apparently not made as a payment on the rental contract, but merely to relieve the estate from further liability.

The judgment is affirmed.