A. JOE STEIN, Respondent, v. SOPHIE REISING, Appellant, No. 41238—224 S. W. (2d) 80.

Court en Banc, October 10, 1949.

Rehearing Denied, November 14, 1949.

*Julius H. Drucker* and *Walter S. Berkman* for appellant.

*Mandel & Cohn* and *Louis E. Zuckerman* for respondent.

BARRETT, C.—This action involves the construction and meaning of this clause in a lease: "Lessee will be given first option to purchase property within year lease if in effect at a price of $8,000.00." The precise question upon this appeal by the lessor is whether the trial court should have decreed specific performance of the clause as an absolute and unconditional option and compelled a conveyance of the property to the lessee.

Sophie Reising owned the two and one half story brick building at 2655 Shenandoah Avenue in St. Louis. For more than twenty years Mrs. Reising and her husband operated a grocery store and market in the first floor of the building and lived in the second floor. Mr. Reising died in 1939 and thereafter Mrs. Reising and her son, Henry, operated the store. In 1946 they decided to sell the grocery store and the building. Mr. A. Joe Stein was introduced to them as a prospective purchaser. He had once operated a grocery store, probably unsuccessfully, and in the intervening years had been employed as a butcher. He immediately entered into negotiations with the Reisings and by the 9th of July had agreed to buy the grocery store. He paid them $4,875.00 for the fixtures and good will of the business for which they gave him a bill of sale. The grocery stock was in-

ventoried to him and he bought a truck from Henry and in turn sold Henry his automobile, for all of which he made a further payment of $2,372.00, or a total cash outlay for the fixtures, stock and truck of $7,247.00. This phase of the transaction was either agreed upon or consummated by Monday, August 12, 1946. On that day Mr. Stein took over the management and operation of the grocery store and he and Mrs. Reising executed the lease.

The lease is a printed form with the dates, the names, the consideration, the description of the premises and the option clause typed into the blank spaces. The lease is of the "store building and flat" for ▇▇ a period of one year from the 12th day of August 1946. The specified year's rent is $1,020.00, payable in monthly installments of $85.00. There is no provision for a renewal of the lease and it provides for double rent in the event the lessee should hold over after the expiration of the specified term, and it also provides that any alterations or repairs will be made at the expense of the lessee. Following the printed form and what may be called the body of the lease is the inserted option clause involved upon this appeal.

Mr. Stein made the monthly payments of rent up to and including June 12, 1947. Since that date he has not paid any rent. It is his position, despite the separate documents and the terms of the option clause, that the purchase of the grocery store and fixtures and the leasing and sale of the building were all a part of one transaction and that throughout the negotiations he maintained the attitude that he wanted to buy the building as well as the store and would not have entered into the arrangement except for the fact that he had a right to buy the building. He claims that Mrs. Reising agreed to and did give him a one year lease with an absolute option to buy the building during the term of the lease for $8,000.00. Accordingly, on the 12th day of February 1947, and on almost every rent paying day thereafter, he advised Mrs. Reising that he was ready to buy the building but she always replied, "Joe, I told you before I am not ready to sell." In June he tendered $8,000.00 in cash and demanded that she execute a deed but she refused, stating that she would see him after she returned from a vacation. This action for specific performance followed on June 27th, 1947.

▇▇ Considering, first, the sentence, *"Lessee will be given first option to purchase property* within year lease if in effect at a price of $8,000.00," apart from its context, it plainly grants a conditional or preferential and not an absolute option to purchase. In R. I. Realty Co. v. Terrell, 254 N. Y. 121, 172 N. E. 262, the lease provided that "Said party of the second part is given first privilege to buy said property for the sum of $14,000.00." It was held that the clause did not grant the lessee an absolute option to purchase the property during the term of the lease. It was held that the lessee's

right to purchase depended upon the lessor's desire to sell, in which event the lessee had the first choice or first refusal. In that case, unlike in this one, the rejection of the single word "first" would have granted an absolute option. In Sander v. Schwab, 315 Ill. 623, 146 N. E. 509, the lease said: "It is understood and agreed that the party of the second part shall, in case of a bona fide sale of said premises, have a first option to purchase during the life of this lease at a price of $13,500." It was held that the option was not absolute but conditional and that the mere desire or intention on the part of the lessor to sell, implied or indicated by the language, did not impose an absolute obligation or duty upon him to do so. In the phrases, "the first right to re-lease," "the first and prior right and option to re-lease," or "the right to the first option," the word "first" may not be rejected as meaningless. Cloverdale Co. v. Littlefield, 240 Mass. 129, 133 N. E. 565; Buddenberg v. Welch, 97 Ind. A. 87, 185 N. E. 865; Landowners Co. v. Pendry, 151 Kans. 674, 100 P. (2) 632. In each of these instances the word "first" plainly qualifies the word "option" and, of necessity, its force and meaning. Koppi v. Gallagher, 230 N. Y. S. 680; Sargent v. Vought, 185 N. Y. S. 578. The language of the sentence under consideration does not in and of itself so plainly grant a conditional option as the sentence in Nu-Way Service Stations v. Vandenberg Bros. Oil Co., 283 Mich. 551, 278 N. W. 683, but the words "*Lessee will be given first option* to purchase" are more strongly indicative of a preferential option to the lessee upon condition or preferentially, in the event the lessor chooses or decides to sell than the language in the New York, Massachusetts, Kansas and Indiana cases.

The only case squarely contrary in principle to this view is Tantum v. Keller, 95 N. J. Eq. 466, 123 Atl. 299, and in that case the clause was, "*First privilege* is extended * * * to purchase said property *at any time* during this lease term * * *." The court said that the word ▇ "first" was not conclusive against an absolute right but at most merely created a doubt or ambiguity. The court pointed to the fact that the option clause fixed the price and the size of the lot and, construing the language against the lessor, held that the underscored language was consonant with the idea of an absolute right rather than with a conditional right. That case does contain the additional words "at any time." In somewhat similar clauses the Nevada and Wisconsin courts found two distinct provisions in the covenant, one giving the lessee the first privilege in the event the lessor decided to sell and the other giving the lessee an absolute option to buy during the term of the lease. Barnhart v. Stern, 182 Wis. 197, 196 N. W. 245; Schroeder v. Gemeinder, 10 Nev. 355. But the language in those leases is not precisely comparable to the language of the sentence before us. The Pennsylvania cases, Stetler v. North Branch Transit Co., 258 Pa. 299, 101 Atl. 980 and McDonald

v. Karpeles, 61 Pa. Super. 496, may conflict in principle with these views but those cases did not turn upon the construction of the option clause alone, other factors were considered. And, it is not necessary to make this case turn alone upon our construction of the option apart from its context or even apart from the circumstances under which it was executed. Annotation 127 A. L. R. 894.

Considering, second, the lease as a whole and the option clause in its context and construing the lease against the lessor (annotation 26 A. L. R. 1413), since she had the instrument drawn, the conclusion that the option is conditional is nevertheless compelled. Other provisions of the lease, when considered with the option clause, do not make the option conditional, rather than absolute, so plainly as did the language of the lease in In re Rigby's Estate, (Wyo.) 167 P. (2) 964. But here we have a lease clearly limited to a one year term and the respondent does not claim that any other provision in fact limits or modifies the meaning of the option clause. He points to the fact that he made improvements and alterations totaling $1,200.00 and the fact that Mrs. Reising contracted in the lease to and did move out of the flat on the 12th of November. But, as to his expenditures on the building, the lease in unmistakable terms provides that "All repairs and alterations deemed necessary by said lessee to be made at the expense of said lessee, with the consent of said lessor, and not otherwise." The fact that she contracted to and did give possession of the flat may be some indication that she did not expect to again occupy the premises but the fact in no way qualifies the force or meaning of the option. Sander v. Schwab, supra. In Fergen v. Lyons, 162 Wis. 131, 155 N. W. 935, reference to other terms in the lease indicated that the parties contemplated extraordinary expenditures which would not be beneficial to the lessee unless he had a right to renew his lease. In addition, the rental was wholly disproportionate to the usual consideration for a one-year lease. The court thought that the words "first privilege of renting" were ambiguous but were rendered certain and the option made absolute by these two factors and the fact that the lessor had leased the property to another. It is not claimed and there is no proof here that the rental and the improvements are disproportionate or excessive and Mrs. Reising has neither sold nor offered to sell her property (annotation 117 A. L. R. 1095, 1096), nor has she taken any other steps irretrievably rendering the conditional option absolute and subject to immediate acceptance as was the case in Hathaway v. Nevitt, (Mo.) 213 S. W. (2) 938. In short, the terms of the lease as a whole do not modify the option clause in any respect or add to its ambiguity or meaning.

It may be that the dealings between the parties were all a part of one transaction, but it is quite certain that the parties intended to and did reduce all their agreements concerning the build-

ing to writing, and their prior negotiations and understandings are contained in the written lease. Mr. Stein read the lease before he signed it; there is no claim of fraud or of mistake in their usual sense, and in all the circumstances it is doubtful that parol evidence was admissible in determining either the meaning of the instrument or the intention of the parties. 32 Am. Jur., Secs. 130-137, 299, pp. 134-140, 278; annotations ■ 25 A. L. R. 787; 88 A. L. R. 1380; 151 A. L. R. 279. It must be kept in mind that this is not an action to reform the lease for fraud or mistake or because the lease as written failed to express the true intention of the parties. Wells v. Fisher, 237 N. Y. 79, 142 N. E. 358. But, assuming that the option clause is ambiguous (J. E. Blank v. Lennox Land Co., 351 Mo. 932, 174 S. W. (2) 862), and even though we consider, third, the acts and conduct of the parties and the extrinsic circumstances, the result may not be altered. In one of the Pennsylvania cases it was said that the uncontradicted evidence showed, despite the ''first privilege'' clause, that it was the understanding of the parties that the lessee was to have the absolute right to renew the lease. McDonald v. Karpeles, supra. But here the parol evidence does not clarify the phrase or indubitably indicate that it was to have had any other meaning than the language used plainly indicates. Forma v. Moran, 76 N. Y. S. (2) 232.

Mrs. Reising admits that she wanted to sell the building as well as the grocery business but admittedly they were unable, initially, to agree upon the terms of a sale, particularly as to the time in which the sale would be consummated. Mr. Stein says that she wanted him to purchase the building within three months of his taking over the grocery store, and accordingly, she had a lease drawn giving him an unconditional three months' option. But he refused to execute that lease, stating that it would be at least six months before he would be able to finance the purchase of the building. She says that she did not offer a three months' option but did offer to give him an option to renew the lease for a term of three years and he declined that offer saying that he wanted but a year's lease. She claims that the written lease expresses their oral agreement and understanding. Thus their prior negotiations and their oral testimony seem to confirm that they were unable to agree on the terms of a sale, particularly as to when the sale was to be consummated. Subsequently, when Mr. Stein would offer to buy, her explanation of not then being ready to sell was that in August, when she offered to sell, she had an investment she could make but by the time he offered to buy the investment was no longer available. It is not necessary to further examine in detail the oral evidence, it is sufficient to show by this brief illustration that the oral testimony of the parties merely emphasizes the claim he now makes that he had an absolute option and her contradictory claim that he did not. In Stetler v. North

Branch Transit Co., 258 Pa. 299, 101 Atl. 980, it was pointed out that a denial of the absolute right to renew a lease would result in the destruction of a valuable right and property to the lessee. And in this case, as subsequent events have demonstrated, the right to purchase the building is a valuable right and its denial may well be ruinous to Mr. Stein. On the other hand Mrs. Reising may have had some compelling reason for selling the building during the first three months of the lease which did not obtain in subsequent months. However the case is decided the consequence is bound to be harsh to the losing party. But we are unable to find in the extrinsic circumstances and upon the entire record any fact unequivocally demonstrating that the intention of the parties or the meaning of the option was other than they have conditionally expressed it in the lease.

Considering all three factors, the option apart from its context, the lease as a whole and the extrinsic circumstances, it can only be said that Mr. Stein had a conditional or preferential and not an absolute option to purchase the building. Accordingly, the judgment of specific performance is reversed.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en Banc. *Tipton, Conkling, Douglas* and *Ellison, JJ.,* and *Hyde, C.J.,* concur; *Leedy* and *Clark, JJ.,* dissent.