487 F.Supp. 1017 (1980)
Amerigo J. STELLA, Plaintiff,
v.
DePAUL COMMUNITY HEALTH CENTER, Defendant.
No. 79-112C(A).
United States District Court, E. D. Missouri, E. D.
March 18, 1980.
*1018 Gerald A. Rimmel, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., for Stella.
Rexford H. Caruthers, James J. Hennelly, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for DePaul.

MEMORANDUM OPINION
HARPER, District Judge.
This case arises out of a dispute as to the disposition of a security deposit following default on a lease.
Plaintiff brought this action in three counts: A declaratory judgment concerning the rights and obligations of the parties with respect to a security deposit, breach of contract of the terms of the lease, and *1019 conversion of the security deposit. Defendant in its answer alleged various setoffs against the security deposit. Defendant also filed a counterclaim for attorney's fees incurred in the preparation of a contract between the parties.
Jurisdiction is proper pursuant to 28 U.S.C. § 1332.
The pleadings, stipulations of fact, credible testimony, and exhibits disclose that plaintiff leased a hospital facility located at 2415 North Kingshighway Boulevard, St. Louis, Missouri, from defendant on or about April 11, 1977. The lease was for a six-month period beginning April 11 and ending October 11 of 1977. The lease required a monthly rental payment of ten thousand dollars plus a security deposit of one hundred thousand dollars. Defendant invested plaintiff's security deposit in a certificate of deposit.
On or about April 11th plaintiff assigned the lease to North St. Louis Medical Health Complex, Ltd. (hereinafter referred to as Health Complex), which then sub-leased the hospital to North St. Louis Hospital Association (hereinafter referred to as Hospital Association). The assignment and sublease were carried out contrary to Article VII of the lease, requiring prior written approval by the lessor, but defendant subsequently agreed to the actions. Plaintiff was a general partner in the Health Complex, but had nothing to do with the daily operations of the hospital.
In a letter dated August 19th, plaintiff requested a six-months extension of the lease and proposed terms for purchasing the hospital. Defendant agreed to extend the lease to April 11, 1978.
Plaintiff, through his attorney, negotiated a contract to purchase the hospital facility from defendant. In a separate contract dated November 17, 1977, plaintiff agreed to pay defendant's counsel fees incurred during preparation of the sales contract when billed.
Plaintiff failed to make rental payments due on October 11, November 11 and December 11 of 1977. In a letter dated December 13, 1977, defendant informed plaintiff that unless all rental and other payments due under the lease were paid by December 21st the lease would be terminated. Plaintiff failed to make the payments and the lease was terminated on or about December 22nd. A letter dated December 23rd confirmed the termination of the lease.
Plaintiff brought this action to recover his entire security deposit, interest accumulated thereon, plus his attorney's fees and costs. In its answer defendant claimed set-offs against the security deposit of $60,000.00, representing six months rent, $6,225.00 for insurance premiums, $521.59 for real estate taxes, $3,542.61 for utility bills, $15,200.00 for damages to a boiler and chiller room, and attorney's fees and costs incurred in this action. Defendant also counterclaimed for $2,500.00 for attorney's fees incurred in the preparation of a contract for the sale of the hospital, plus attorney's fees and costs incurred in this action.
In the absence of ambiguity, the language of a contract is controlling. Latimer Motors, Ltd. v. McIntosh Motors, Inc., 512 S.W.2d 875, 880 (Mo.App.1974).
Article XVIII of the lease provides that a default occurs when the lessee fails to make prompt payment of the rent and that in the event of a default the lessor may take possession of the hospital "and declare this lease forfeited and the term thereof ended, * * *. In the event of any such default, and the forfeiture and termination of the Lease by the Lessor, the Lessor shall be entitled to apply the security deposit held by Lessor pursuant to Article XXVII hereof to the rental payments due during the remaining term of this Lease and for any other purpose authorized under Article XXVII. At the option of the Lessor and in lieu of forfeiting this Lease as above described, the Lessor may re-enter the demised premises as aforesaid and as the agent of the Lessee * * * relet said premises * * *, and the Lessor may collect the rents therefor, applying the same * * * to the payment of the rent due or to become due under this Lease and the Lessee hereby agrees to pay any deficiency *1020 therefor. No such re-entry shall release the Lessee from its covenants to pay rentals and other charges provided for herein."
As evidenced by the December 13th and 23rd letters, defendant clearly chose to terminate the lease rather than re-enter and relet the hospital as plaintiff's agent. At the time that defendant declared the lease forfeited, plaintiff was in default for three months' rent and there were three months remaining under the lease as extended. Defendant contends that plaintiff is liable for three months' rent due after the lease was terminated as well as the preceding three months' rent. However, the lease provides that if it is declared forfeited its term is ended. Defendant's other option under the lease  to re-enter the hospital facility and relet it as plaintiff's agent  specifically provides that plaintiff will remain liable for any deficiencies in rent throughout the life of the lease. Since the lease was terminated on or about December 22, 1977, defendant is only entitled to rent due up to that time, that is $30,000.00.
Article XI of the lease provides that the lessor shall pay one-half of all real estate and personal property taxes assessed against the hospital facility during 1977. Article XII provides that the lessee will pay all utility charges for services during the term of the lease. The parties stipulated that defendant retained from plaintiff's security deposit $521.59, representing one-half the real estate taxes for 1977, and $3,529.96, representing utility charges for water and sewer bills incurred during the term of the lease. The parties also stipulated that plaintiff had no record of paying these taxes and utility bills. Plaintiff in his post-trial brief, contends that defendant did not prove the period in which the tax and utility bills were incurred, and thus defendant is not entitled to apply the bills against plaintiff's security deposit.
The interpretation of stipulations is primarily a matter of ascertaining the intent of the parties. Their intent is a question of fact to be determined by the court based on the evidence before it. Wo Company v. Benjamin Franklin Corp., 562 F.2d 1339, 1344 (1st Cir. 1977), United States v. Reading Co., 289 F.2d 7, 9 (3rd Cir. 1961). The court finds that the stipulations were intended by the parties to admit plaintiff's liability for taxes of $521.59 and utility charges of $3,529.96, absent proof by plaintiff of prior payment. No such proof was produced at trial. Defendant is entitled to set off these sums against plaintiff's security deposit.
Defendant concedes that plaintiff is not liable for insurance premiums of $6,225.00 or for boiler room damage of $15,200.00.
Defendant counterclaimed for $2,500.00 representing attorney's fees incurred in the preparation of a contract to sell the hospital facility to the Health Complex. The contract was rendered void when the plaintiff failed to make rental payments. However, in a separate contract plaintiff had agreed to pay the attorney's fees "when billed." Plaintiff claims that he was never billed and so is under no obligation to pay the fees. Where demand for payment is required, institution of a suit is sufficient. Lackey v. Wilder, 33 S.W.2d 1011, 1014 (Mo.App.1931). The filing of a counterclaim is also sufficient demand. See National Bank of Commerce in St. Louis v. Laughlin, 305 Mo. 8, 264 S.W. 706, 716 (1924). Defendant's filing of the counterclaim is sufficient demand of plaintiff for this bill.
Article XXVII of the lease requires that plaintiff's security deposit be invested by defendant in an automatically renewable certificate of deposit in a bank of defendant's choice. Defendant complied with this provision by investing the $100,000.00 in a certificate of deposit at the Mark Twain Bank in Bridgeton, Missouri. Plaintiff alleges that the interest rate was less than defendant could have received and that defendant had a duty to seek a higher rate.
Plaintiff characterizes the security deposit as a trust and the defendant as the trustee, with the duty to exercise due care and prudence as to investing the $100,000.00. Plaintiff also alleges that the legal *1021 title to the $100,000.00 remained with plaintiff. The Court agrees with this allegation and since a trustee must have legal title to the res, Potter v. Winter, 280 S.W.2d 27, 33 (Mo.1955), defendant was not trustee of the security deposit.
Article XXIV of the lease provides that "the prevailing party shall be entitled to attorney's fees and costs." Both parties have asked for their respective attorney's fees and costs. Plaintiff has been successful in recovering a portion of his security deposit. Defendant has been successful in its counterclaim and in certain setoffs against the security deposit. In view of the fact that both parties were partially successful and neither party totally successful, the Court finds that neither party was "prevailing" as contemplated in Article XXIV. Under these circumstances, neither party will be awarded attorney's fees or costs. See Boenzle v. U. S. Fidelity & Guaranty Co., 258 S.W.2d 938, 943 (Mo.App.1953), Ehrlich v. Lichtenfeld, 502 S.W.2d 420, 424 (Mo.App.1973).
Accordingly, it is ordered that defendant return to the plaintiff the security deposit plus sixty-six percent of the accumulated interest thereon, less setoffs of $34,051.55, and attorney's fees of $2,500.00 under the counterclaim, and each party will bear its own costs and attorney's fees.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law and the clerk of the Court will prepare and enter the proper order to that effect.