Amerigo J. STELLA, Appellee,

v.

DePAUL COMMUNITY HEALTH
CENTER, INC., Appellant.

No. 80-1297.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1980.

Decided March 10, 1981.

Rehearing and Rehearing En Banc
Denied April 7, 1981.

Lashly, Caruthers, Thies, Rava & Hamel, A Professional Corp., Rexford H. Caruthers and James J. Hennelly, St. Louis, Mo., for appellant.

Frank Susman, Gerald A. Rimmel, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

DePaul Community Health Center, Inc. (DePaul) appeals from a final judgment of

* The Honorable Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation.

the district court in favor of Amerigo J. Stella (Stella) with respect to the disposition of a security deposit following default on a lease. The district court[1] ordered DePaul to return the $100,000.00 security deposit to Stella plus 66% of the accumulated interest thereon, less setoffs of $34,051.55, and attorneys' fees of $2,500.00 under a counterclaim. Each party was directed to bear its own costs and attorneys' fees. *Stella v. DePaul Community Health Center, Inc.,* 487 F.Supp. 1017, 1021 (E.D.Mo.1980). We affirm.

On April 11, 1977, Stella leased a hospital facility located at 2415 North Kingshighway Boulevard, St. Louis, Missouri, from DePaul for a six-month term. The lease provided for monthly rental payments of $10,000 payable on the 11th day of each month. In addition, Stella gave DePaul a security deposit of $100,000 that DePaul invested in a certificate of deposit. In August of 1977, Stella requested a six-month extension of the lease to April 11, 1978, that DePaul agreed to under the same terms and conditions as the original lease.

Stella failed to make rental payments on October 11, November 11 and December 11 of 1977. During this period Stella and DePaul were negotiating a possible contract for the purchase of the hospital by Stella and Stella agreed to pay DePaul's attorneys' fees incurred in preparation of the sale contract. Negotiations broke down, however, and on December 13, 1977, DePaul informed Stella that if the unpaid rental payments were not made by December 21, 1977, the lease would be terminated. The payments were not made and the lease was terminated on or about December 22, 1977.

Stella brought this action to recover his security deposit of $100,000 and the interest earned thereon. The district court found that Stella was entitled to the security deposit less setoffs of $521.59 for taxes, $3,529.96 for utility charges, and $30,000 for rent due at the time of termination. The district court also found that DePaul was entitled to $2,500 in attorneys' fees for preparation of the sale contract. DePaul asserts on this appeal that it is entitled to an additional $30,000 representing rent for the final three months of the lease term.

Article XVIII[2] of the lease provided DePaul with two options in the event of default. It could re-enter, take complete possession, and declare the lease "forfeited and the term thereof ended," or it could re-enter, relet for any unexpired part of the term of the lease, and, after applying any rents collected from the reletting to the "rent due or to become due" under the

---

1. The Honorable Roy W. Harper, United States District Judge, Eastern District of Missouri.

2. Article XVIII of the lease provides, in pertinent part:

   1. If one or more of the following events (herein called "defaults") should happen and be continuing, namely:

   (a) if the Lessee fails to make punctual payment of any rent herein agreed to be paid; ... then and in any such event the Lessor shall have the right, at its option, then or at any time thereafter and while such default shall continue to re-enter and take complete and peaceful possession of the demised premises and the hospital equipment and declare this Lease forfeited and the term thereof ended, and with or without process of law may remove all persons therefrom. The Lessee in such event shall peacefully and quietly yield up and surrender the demised premises and hospital equipment to Lessor and execute and deliver to Lessor such instrument or instruments as will properly evidence termination of Lessee's rights under this Lease and of its interest therein, and as may be required by the Lessor. In the event of any such default and the forfeiture and termination of this Lease by the Lessor, the Lessor shall be entitled to apply the security deposit held by Lessor pursuant to Article XXVII hereof to the rental payments due during the remaining term of this Lease and for any other purposes authorized under Article XXVII. At the option of the Lessor and in lieu of forfeiting this Lease as above provided, the Lessor may re-enter the demised premises as aforesaid and as the agent of the Lessee remove therefrom any property of the Lessee, and may sublet and relet said premises and the hospital equipment or any part thereof from time to time for any unexpired part of the term of this Lease, and the Lessor may collect the rents therefor, applying the same first to the payment of expenses of such re-entry and reletting and then to the payment of the rent due or to become due under this Lease and the Lessee hereby agrees to pay any deficiency therefor.

lease, hold Stella liable for any deficiency. DePaul chose the first option, to terminate the lease, rather than re-entering and reletting as Stella's agent. The present dispute arises over a clause included in the first option that says DePaul is entitled to apply the security deposit to the "rental payments due during the remaining term of [the] Lease."

■ In Missouri, a lessor generally has three options upon default by a lessee:

Option 1.—To remain out of possession, treat term as subsisting, and recover rent.

Option 2.—Give notice to tenant, resume possession and relet to mitigate damages, collecting loss from tenant.

Option 3.—Reenter, resume possession in own right and close the term. If no notice is given and landlord resumes possession, he is deemed to be doing so to terminate the lease.

*Consolidated Sun Ray, Inc. v. Oppenstein*, 335 F.2d 801, 810 (8th Cir. 1964); *Hurwitz v. Kohm*, 594 S.W.2d 643, 646 (Mo.App. 1980). Where a lessor chooses the third option, the general rule is that rent which has not fully accrued is not recoverable. *See, e. g., Floro Realty & Investment Co. v. Steem Electric Corp.*, 128 F.2d 338, 342 (8th Cir. 1942); *Sharon v. American Fidelity Co.*, 172 Mo.App. 309, 314–315, 157 S.W. 972, 974 (1913). There is, however, an exception to the general rule that has been applied in several jurisdictions. Where it has been expressly provided that the obligation to pay rent to the end of the term shall not cease even upon termination of the lease, several courts have enforced such provisions. *See, e. g., Burns Trading Co. v. Welborn*, 81 F.2d 691, 695 (10th Cir.), *cert. denied*, 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394 (1936); *Heims Brewing Co. v. Flannery*, 137 Ill. 309, 318, 27 N.E. 286, 289 (1891); *Selts Investment Co. v. Promoters of the Federated Nations of the World, Inc.*, 197 Wis. 476, 486, 222 N.W. 812, 814 (1929). In Missouri, the exception has been noted, *see, St. Louis Billposting Co. v. Stanton*, 172 Mo.App. 40, 47–48, 154 S.W. 821, 824 (1913), but never applied.

While it appears that there is no controlling Missouri precedent for the case before us, *Stanton* is illustrative of the way Missouri courts deal with the question of future rents. In *Stanton*, the court was called on to determine the effect of the clause "but for this cause the obligation to pay shall not cease." Despite the fact that the circumstances of *Stanton* seemingly called for enforcement of this provision for future rent, the court refused to do so. An opposite result was reached by the Illinois Supreme Court in a case involving the identical clause. In *Heims Brewing Co. v. Flannery*, 137 Ill. 309, 27 N.E. 286 (1891), the Illinois court held, in construing the clause "but for this cause the obligation to pay shall not cease," that the lessee was liable for rent for the residue of the term. Missouri courts apparently take a stronger stand against future rents than do other courts. *Compare Abrams v. St. Louis County Library District Board*, 364 Mo. 25, 258 S.W.2d 672 (1953); *VonSchleinitz v. North Hotel Co.*, 323 Mo. 1110, 23 S.W.2d 64 (1929); *and St. Louis Billposting Co. v. Stanton*, 172 Mo.App. 40, 154 S.W. 821 (1913), *with Burns Trading Co. v. Welborn*, 81 F.2d 691, 695 (10th Cir.), *cert. denied*, 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394 (1936); *Grommes v. St. Paul Trust Co.*, 147 Ill. 634, 35 N.E. 820 (1893); *Heims Brewing Co. v. Flannery*, 137 Ill. 309, 27 N.E. 286 (1891); *Logan v. Green*, 53 S.W.2d 119 (Tex.Civ. App.1932); *and Selts Investment Co. v. Promoters of the Federated Nations of the World, Inc.*, 197 Wis. 476, 222 N.W. 812 (1929).

■ There is a general rule that where there is any doubt or uncertainty as to the meaning of a lease, the lease should be construed most strongly against the lessor. This is particularly true where the lease was prepared by the lessor.[3] 49 Am.Jur.2d *Landlord & Tenant* § 143 (1970); 51C C.J.S. *Landlord & Tenant* § 232(12) (1968). We realize that the Missouri courts have been reluctant to apply this rule of construction,

---

**3.** DePaul, the lessor, admitted in oral argument that it had prepared the lease here in question.

*see J. E. Blank, Inc. v. Lennox Land Co.*, 351 Mo. 932, 960–961, 174 S.W.2d 862, 870–71 (1943); *Conservative Federal Savings & Loan Ass'n v. Warnecke*, 324 S.W.2d 471, 480 (Mo.App.1959), but they have done so in appropriate circumstances, *see Stein v. Reising*, 359 Mo. 804, 224 S.W.2d 80 (1949); *Keith v. Tucker*, 483 S.W.2d 430 (Mo.App. 1972); *Gromer v. Watson*, 241 Mo.App. 77, 233 S.W.2d 45 (1950).

In the present case this Court is concerned that giving effect to the clause calling for "rental payments due during the remaining term of [the] Lease" would render the second option in Article XVIII of the lease meaningless. The lease appears to give DePaul, the lessor, two of the three traditional common law options upon default by a lessee: (1) termination or (2) re-entry and reletting as lessee's agent. Giving effect to the above clause, however, would so modify the traditional termination option that it would make the relet option of no advantage and its inclusion in the lease meaningless. In the normal situation, a lessor must make a choice between termination, where the lessor need not expend any effort in finding a replacement lessee but is also not entitled to any rent for the unexpired lease term, and reletting, where the lessor must find a replacement lessee but is entitled to the difference between the rent obtained from the new lessee and that the lessor would have obtained from the defaulting lessee during the remaining lease term. If a lessor could terminate a lease and still collect rent from the defaulting lessee through the rest of the term, there is no reason why a lessor would ever choose to go to the trouble of re-entering, reletting, and holding the lessee liable for any difference in rent.

Applying the rule of construction previously mentioned, we must construe any ambiguity against DePaul as lessor. Since we find that giving effect to the clause for future rents would render the relet option of the lease superfluous, we must refuse to give the clause effect.

Stella argued in his appeal brief that the district court erred in failing to give Stella his attorneys' fees and costs under Article XXIV [4] of the lease and also erred in failing to award him additional interest which DePaul allegedly could have earned had DePaul invested the security deposit in a better investment. Stella is precluded from assigning error in these matters because he failed to cross-appeal in this action. *See Morley Construction Co. v. Maryland Casualty Co.*, 300 U.S. 185, 191–92, 57 S.Ct. 325, 327–328, 81 L.Ed. 593 (1937); *United Optical Workers Local 408 v. Sterling Optical Co.*, 500 F.2d 220, 224 (2d Cir. 1974); 5 C.J.S. *Appeal & Error* § 1498 (1958).

Guided by the rule that courts should resolve ambiguities within a lease in favor of the lessee and because we find the Missouri courts are reluctant to construe lease provisions so that lessors can collect rent that becomes due after termination of the lease, we affirm the judgment of the district court.

---

4. Article XXIV of the lease provides:

If either party shall bring an action against the other party to enforce any of the terms of this Lease, the prevailing party shall be entitled to attorneys' fees and costs, all as adjudged reasonable by the Court.