West Concord Milling Co. v. Hosmer, 129 Wis. 8.

WEST CONCORD MILLING COMPANY, Appellant, vs. HOSMER and another, Respondents.

*February 28—June 21, 1906.*

*Landlord and tenant: Termination of lease by surrender.*

Before the expiration of their term lessees of a mill told the lessor that they would have to give up the mill, and he replied that they could do so if they would get a man as good as they were. They said they would try, but paid no rent thereafter, and thereupon surrendered the premises to the lessor, who accepted such surrender and immediately took full and exclusive possession. *Held,* that the lease was thereby terminated and the lessees relieved from further payment of rent.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

West Concord Milling Co. v. Hosmer, 129 Wis. 8.

This is an action by the lessor to recover the balance of unpaid rent from the lessees. It appears and is undisputed that July 17, 1902, the plaintiff leased to the defendants the premises described, with all the buildings and appurtenances thereon, for the term of two years from August 15, 1902, with the privilege of buying at the end of the first year for $6,200. The defendants therein agreed to pay to the plaintiff $50 on the 15th day of each month in advance for and during the full term of the lease, with an agreement that, if the defendants failed to pay rent as specified or failed to fulfil any of the covenants therein contained, it should be lawful for the plaintiff to re-enter and take possession of said premises and hold and enjoy the same, without such re-entry working a forfeiture of rents to be paid and the covenants to be performed by the defendants for the full term of the lease. This action was commenced to recover $400, being eight instalments of rent—the first being that of February 15, 1903, and the last that of September 15, 1903,—with interest on each instalment from the day of its default until paid.

The defendants by way of answer admitted the execution of the lease and the default in paying the rent due February 15, 1903, or at any time since, and by way of counterclaim for $500 damages alleged that at the time of making the lease the plaintiff represented to the defendants that the gristmill was in good condition and would do good work, and the defendants, relying upon such representations, made the lease, whereas, as a matter of fact, as the plaintiff then well knew, the elevator pit was improperly constructed and leaked, and became full of water and wet, and spoiled a large quantity of grain and injured and spoiled the flour made therefrom; that by reason of such defects the defendants could not use the mill, and so quit and surrendered possession thereof to the plaintiff, and that the plaintiff accepted such surrender of such premises. The plaintiff replied to the counterclaim by way of a general denial.

A trial being had, the jury at the close thereof returned a special verdict to the effect (1) that the elevator pit in the mill was so improperly constructed or out of repair that it would leak and fill with water to the extent that the elevator cups would dip water and injure wheat therein; (2) that such defect in the elevator pit was not capable of being ascertained by a reasonably careful and prudent person by the exercise of ordinary care and diligence in inspecting the mill generally; (3) that the defendants in the operation of said mill could not, by using ordinary care and diligence, have prevented the wheat in the elevator pit from becoming wet from water therein; (4) that when the lease in question was made the president of the plaintiff corporation, with whom such contract was negotiated, knew that said elevator pit was defective and in a dangerous condition, so that it would fill with water and injure the wheat therein; (5) that the defendants did sustain damage from wheat becoming wet in the elevator pit in the sum of $232.50; (6) that the defendants, when they paid their rent under the lease on August 14, 1902, and the following months thereafter to February 15, 1903, did have knowledge of the defective condition of the elevator pit (answered by the court); (7) that the defendants did surrender to the plaintiff, and the plaintiff did take full and exclusive possession of, the leased premises, and accept such surrender, except as authorized by the lease; (8) that the plaintiff did take such exclusive possession immediately; (9) that the use of the mill as a mill was materially lessened by reason of such condition, when operated with ordinary care and prudence.

Thereupon the court by order denied the defendants' motion for judgment upon the answers of the jury to questions 5 and 6 in said special verdict, and further ordered that the answer of the jury to question 3 in the special verdict be changed from the negative to the affirmative, so that it found, in effect, that the defendants, in the operation of the mill,

could by using ordinary care and diligence have prevented the wheat in the elevator pit from becoming wet from the water therein; and further ordered that the answer to question 7 in the special verdict be changed from the affirmative to the negative, so that it found, in effect, that the defendants did not surrender to the plaintiff, and the plaintiff did not take full and exclusive possession of, the leased premises, and accept such surrender, except as authorized by the lease; and it was further ordered that upon the remaining questions, to wit, 1, 2, 4, 8, and 9, of the special verdict, and the uncontradicted evidence, judgment be entered for the defendants, dismissing the action, with costs. Thereupon and on motion of the defendants judgment was entered dismissing the plaintiff's complaint, with $34.90 costs. From that judgment the plaintiff appeals.

*Mills Tourtellotte,* for the appellant.

*C. L. Hood,* for the respondents.

The following opinion was filed April 17, 1906:

CASSODAY, C. J. Most of the findings of the jury were in favor of the defendants. They were to the effect that the elevator pit was improperly constructed and leaked; that such defect was known to the plaintiff at the time of making the lease, but was not discoverable by the exercise of ordinary care and diligence in inspecting the mill generally; that the use of the mill was materially lessened by reason of such defect; and that the defendants had sustained damage by reason thereof in the sum of $232.50. But the defendants were not allowed to recover such damages on their counterclaim, because the court found, upon the undisputed facts, that by using ordinary care and diligence in operating the mill the defendants could have prevented the wheat in the elevator pit from becoming wet from the water therein, and that they paid their rent monthly in advance under the lease for each of the first six months of its duration with full knowledge of

such defective condition of the elevator pit. So the defend-
ants were defeated on their counterclaim, and, since they have
not appealed, the controversy as to that, and the ruling of the
court thereon, are necessarily eliminated from the case. The
important question for determination is whether, upon the
facts found by the jury and the undisputed evidence, the
court was justified in dismissing the complaint and ordering
judgment in favor of the defendants. The defendants claim
that they were justified in refusing to pay the seventh instal-
ment of rent, and those subsequently accruing, by reason of
the defective condition and leakage of the elevator pit, which
materially lessened the use of the mill, and which facts were
known to the plaintiff at the time of making the lease, but
were unknown to the defendants at that time, and not then
discoverable by the exercise of ordinary care and diligence in
inspecting the mill generally. In addition to the facts stated
it appears and is undisputed, in effect, that a short time after
the defendants had paid the instalment of rent due January
15, 1903, and before the next monthly instalment became due,
the defendants informed the plaintiff that they would have
to give up the mill; that the plaintiff replied that they could
do so if they would get a man as good as they were; that the
defendants said they would try, but never paid any rent there-
after; and thereupon, and on or about February 15, 1903, the
defendants surrendered the leased premises to the plaintiff,
and the plaintiff accepted such surrender and immediately
took full and exclusive possession thereof, and has retained
such possession ever since.

Did such facts relieve the defendants from further pay-
ment of rent? In an English case decided by the court of
King's Bench long ago, a dispute had arisen between the land-
lord and tenant, whereupon "the tenant said to the landlord,
'I shall quit,' and the latter said, 'You may do so, and I shall
be glad to get rid of you.'" Thereupon the tenant removed
her furniture from the premises and sent the keys to the land-

West Concord Milling Co. v. Hosmer, 129 Wis. 8.

lord, who accepted them, whereupon the landlord brought *assumpsit* for use and occupation, and it was held that the landlord "could neither recover the rent, which by virtue of the original contract would have become due at the expiration of the current quarter, nor rent *pro rata* for the actual occupation of the premises for any period short of the quarter." *Grimman v. Legge,* 8 B. & C. 324. To the same effect, *Auer v. Penn,* 92 Pa. St. 444. In this last case it was held that "by such acceptance and surrender the relation of landlord and tenant is ended; and the landlord, having taken possession of the premises, either personally or by another tenant, is estopped from collecting rent." This court has held that "if before the expiration of the term the lessee offers to surrender the lease, and the lessor thereupon takes exclusive possession of the premises, this amounts to a surrender and acceptance which terminates the lease." *Kneeland v. Schmidt,.* 78 Wis. 345, 47 N. W. 438. To the same effect, *Maxon v. Gates,* 112 Wis. 196, 201, 88 N. W. 54, and cases there cited; *Commercial H. Co. v. Brill,* 123 Wis. 638, 642, 101 N. W. 1101. We must hold that the plaintiff, having accepted such surrender of the leased premises and taken full and exclusive possession thereof, was thereby estopped from collecting rent which otherwise would have accrued under the lease, subsequent to such surrender.

We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied June 21, 1906.