476

SELTS INVESTMENT COMPANY, Appellant, vs. PROMOTERS OF THE FEDERATED NATIONS OF THE WORLD, INC., and others, Respondents.

*May 10, 1928—January 8, 1929.*

478

*Michael Levin* of Milwaukee, for the appellant.

For the respondents there was a brief by *Lenicheck, Boesel & Wickhem* of Milwaukee, and oral argument by *F. J. Lenicheck.*

The following opinion was filed June 18, 1928:

DOERFLER, J.   Under the terms of the lease, upon a breach of any of its conditions or covenants therein mentioned, the lessor may without notice declare the term ended. He may then also re-enter, with or without process of law. This re-entry, according to the terms of the lease, may be either with or without force.   Such expulsion or removal by the lessor, or through the medium of legal proceedings, shall not affect the liability of said lessee for either past rent due or future rent to accrue.

In the case of *Tower Building Co. v. Andrew,* 191 Wis. 269, 210 N. W. 842, the provisions in the lease, as far as the question herein involved is concerned, are substantially like those above set forth in the Eleventh paragraph of the lease involved in the instant case.   In the *Tower Case* the lessee breached the lease by failing to pay the stipulated rent. Notice to terminate the lease was then served upon the tenant, but such notice did not comply with the requirements of sub. (2) of sec. 291.01 of the Statutes.   It was held in that case that the unlawful detainer proceedings were purely statutory, and in order that one may avail himself of these proceedings every provision of the statute applicable must be strictly complied with.   Having commenced unlawful detainer proceedings ostensibly under the provisions of sec. 291.01, and having failed to give the notice required by that statute, the lessor was denied the remedy provided for by that statute.   In that case, however, a notice was served upon the lessee declaring the lease terminated.   It was there held: "There can be no doubt that the lease was by its

terms and the service of the notice . . . forfeited and at an end." · The lease being terminated, there is no basis or consideration for future rents. (See the opinion in the preceding case, handed down herewith, *ante*, p. 471, 220 N. W. 220.)

A well-founded distinction is recognized by the statute with respect to short-term leases and long-term leases. The procedure to declare long-term leases forfeited is contained in sec. 234.19 of the Statutes (formerly sec. 2197*a*). Evidently the only purpose of providing a different procedure in long-term leases from that which obtains under short-term leases is based upon the theory that in long-term leases the lessee is under obligation to expend large sums of money for the improvement of the premises, with the result that his equity in the property is vastly greater than that possessed by a lessee under a short-term lease. The legislature considered that where a lessee takes possession of property for more than fifty years, under and pursuant to which he is required to construct or make extensive improvements upon the property, a period of three days such as is provided for by sec. 291.01 would ordinarily be inequitable and tend to work great injustice. Therefore, in long-term leases it is provided that, before a lease can be judicially declared forfeited and the lessee expelled from the premises, a year's time shall be fixed as a period for redemption.

Such a long-term lease was involved in the case of *Mohawk Co. v. Bankers Surety Co.* 162 Wis. 272, 156 N. W. 154. In that case it was held as follows:

"When the plaintiff . . . elected to resume possession and did resume possession of the demised premises . . . it accepted this possession of the demised premises in cancellation of all obligations to become due thereafter on the lease. It elected for such subsequently accruing damages this remedy instead of the remedy for breach of covenant."

The portion of the opinion in the *Mohawk Co. Case* just quoted amounts to a reasonable construction of sec. 234.19,

Stats., and when we consider the object and purpose the legislature had in mind in enacting sec. 234.19, in connection with the object and purpose in regard to sec. 291.01, we must logically arrive at the conclusion that where, under proceedings prosecuted under these statutes, the demised premises are surrendered to the plaintiffs pursuant to a forfeiture, and when possession thereof is delivered by the lessees to the lessors and accepted, the lease comes to an end, with the effect that no future basis can exist to warrant further rents. The summary proceedings under the unlawful detainer statutes are not unlike the action of strict foreclosure under a land contract. When the lessor in his notice to quit under sec. 291.01 creates a situation pursuant to which the lessee can act in accordance with one of two privileges extended, the result is that if he pays the rent the lease is reinstated and the relations of landlord and tenant under the lease continue as they existed before the breach; on the other hand, if the lessee, in compliance with the notice, vacates the premises and surrenders possession to the lessor, and the latter accepts the same, it is with the understanding that the lease terminates and the lessee's obligation to pay rent also comes to an end. See, also, *Kneeland v. Schmidt,* 78 Wis. 345, 348, 47 N. W. 438; *West Concord M. Co. v. Hosmer,* 129 Wis. 8, 12, 13, 107 N. W. 12.

The lease also provided that, where a surrender of the lease occurs, the acceptance thereof must be in writing, subscribed by the lessor or its duly authorized agent. There was no written acceptance of the surrender, as provided for in article Eleventh above quoted, and plaintiff's counsel therefore insists that the surrender pursuant to the notice to quit does not operate as a release for future rent. We are of the opinion that the surrender referred to in sec. 291.01 results from the written demand of the lessor, duly signed by him or his authorized agent, and that when the lessee, upon the service of such a notice, fails or refuses to pay the rent, but

exercises 'the privilege extended to him by the lessor to surrender up and deliver the premises to the lessor within the time provided for by the statute, the lessor cannot complain in any event of his own failure to comply with the provisions of the lease in the execution of a written surrender. In any event, it must be deemed that the written surrender is waived.

*By, the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed January 8, 1929:

DOERFLER, J. On a motion for a rehearing in this court it is argued by plaintiff's counsel that the court erred in denying plaintiff's right of recovery against the defendants, upon the ground that the omnibus provision contained in the lease, set forth at the foot of paragraph Eleventh (see original opinion, p. 477), which provision starts with the words "Provided always, and these presents are made upon the express condition," etc., authorizes a recovery for rents accruing subsequent to the forfeiture; in other words, it is argued that the liability on the part of the defendants survives the forfeiture of the lease which resulted from the giving of the three days' notice to quit and the failure of the tenant to pay the rent within such period. The provision above referred to expressly provides that where default occurs in the payment of the rent reserved it shall be lawful for the lessor, if he so elects, to re-enter the demised premises, either with or without process of law and without notice, and to expel the lessee and to, repossess such premises and enjoy the same as before the demise.

It is argued by defendants' counsel that this language immediately preceding denotes merely the common-law remedy and does not include summary proceedings such as are provided for by the unlawful detainer statute of this state. If the provision ended there, the position of defendants' counsel would be unquestionably correct, but the lease continues: "Without prejudice to any remedies which might otherwise

be used for arrears of rent or preceding breach of covenant; . . ." Such language, if it means anything, would indicate that the landlord is not confined to the common-law remedy, but might pursue any remedy which is authorized by law, whether common-law or statutory.

Subsequent to the semicolon which succeeds the word "covenant," the following language is employed:

"And such expulsion or removal, whether by direct act of said lessor, its agents or employees, or through the medium of legal proceedings instituted for that purpose, shall not affect the liability of said lessee for the past rent due *or future rent to accrue under this lease.*"

It will be observed that by the expression "or through the medium of legal proceedings instituted for that purpose," it was the intention of the parties not to confine the lessor, in the event of breach, to the common-law remedy of ejectment, but, on the contrary, legal proceedings are authorized. The legal proceedings may be proceedings under the statute as well as under the common law. The lease, therefore, is sufficiently explicit to authorize summary proceedings under the unlawful detainer statute of this state, and if this is so (and we are now convinced that it is), then the liability for rents accruing during the term and after the forfeiture survives.

There can be no dispute that, when the notice to quit in the instant case was served, the lessee's estate thereby became forfeited, and from this forfeiture the tenant could only relieve itself by the payment of the rent within the three-day period, and such payment so made would have reinstated it in all respects to its former estate, as though no default with respect to payment of rent had occurred. When such forfeiture thus became effected the relationship of landlord and tenant ceased. The lessee, however, expressly covenanted in the lease that it would pay the rent for the entire term in accordance with the provisions of the lease, forfeiture or no forfeiture; so that, while the relationship of landlord and

tenant ceased with the forfeiture, the *contract relation* between these parties continued. Therefore, the acceptance of the premises by the plaintiff, as is fully explained in the original opinion, manifested a termination of the landlord and tenant relationship, but had no effect whatsoever upon the liability of the lessee for subsequently accruing rents.

In 36 Corp. Jur. p. 336, it is said:

"The tenant may continue liable to the landlord after the termination of the tenancy because of the inclusion in the lease of provisions imposing liability for rent, damages, or the deficiency arising in the case of the reletting."

The text so quoted from Corpus Juris is supported by a long list of authorities, both federal and state, and the rule as so pronounced is the prevailing law in this country, according to the overwhelming weight of authority. This is persuasive of the error of the court in its original decision.

The lessee expressly covenanted in the lease to pay the annual rental for each year during the term in monthly instalments, in advance, each instalment to be paid on the first day of each and every month. The guaranty clause under the lease reads as follows:

"For value received, the undersigned, Emelie L. Baireuther and Leo James Lentzen, hereby guarantee that the lessee named in the within lease will promptly pay the rent and other charges herein reserved when due, and perform all the covenants and conditions of said lease, and in case default is made in the payment of rent and other charges or performance of the covenants and conditions of said lease, the undersigned hereby agree to become and be jointly and severally liable with the lessee for each and every separate default."

It is plausibly argued by counsel for the defendants that the guarantors bound themselves solely for the prompt payment of the monthly instalments of rent as they fall due; that the guaranty does not contain a provision for the payment of damages; and that if it had been in contemplation of the parties that the guarantors would be held liable for

the damages ensuing by reason of the fact that after the forfeiture the lessor resumed possession of the demised premises and attempted again to lease the same, for the purpose of minimizing the damages (which damages would consist of the difference between the rent reserved and the amount of rent actually obtained), the lease should have contained an express provision for the recovery of such damages against the guarantors. It is also argued that the contract of guaranty must be strictly construed in favor of the guarantors.

Here it must be noted that the guarantors did not only guarantee the prompt payment of the rent reserved, when due, but they also agreed to perform all the covenants and conditions of said lease, and among the covenants and conditions of said lease are the foregoing covenants, which in substance provide that in case of a forfeiture the lessor might again take possession of the leasehold estate and hold the lessee liable for all rents, including future rents which have not yet accrued. The point made by counsel that there is a vital distinction between rents and damages as applicable to the instant case is rather technical, to say the least. The damages consist of unpaid rents. They are based upon the rents, and upon nothing else. In the instant case it is clear that the lessor elected to relet the premises and to minimize the damages. It is clear that there are authorities which hold that a lessor need not relet the premises but can charge the lessee with all of the rent reserved. *Matter of General Assignment of one William G. Hevenor for the Benefit of Creditors,* 144 N. Y. 271, 274, 39 N. E. 393. The better rule, in our opinion, is the one which requires the landlord to use reasonable diligence to obtain a new tenant or tenants, so that the damages may be minimized.

The rule is properly stated in *Galbraith v. Wood,* 124 Minn. 210, 144 N. W. 945, 948, where it is said:

"It is the law that, upon the assertion of a forfeiture by the landlord, he is still entitled to rent which had previously

become due, but not entitled to recover rent subsequently to become due. Indeed, such a forfeiture terminates the relation of landlord and tenant, and no rent can subsequently become due. 1 Tiffany, Landl. & T. 1174; 18 Am. & Eng. Ency. of Law, 392; *Stees v. Kranz,* 32 Minn. 313, 20 N. W. 241. This is clearly the settled doctrine where there is no express stipulation in the lease giving the landlord the right to recover the rent for the balance of the term. Where there is such a stipulation the tendency of the decisions is to hold it valid, and to continue the liability of the tenant in spite of the termination of the lease. Such liability is for any deficiency in the amount of rent obtained on a lease to another. 1 Tiffany, Landl. & T. 1175 *et seq.,* and cases cited. This is not strictly a liability for rent but a contractual liability based upon the agreement in the case."

See, also, *Central Inv. Co. v. Melick,* 267 Ill. 564, 108 N. E. 681; *Halpern v. Manhattan Ave. Theater Corp.* 173 App. Div. 610, 160 N. Y. Supp. 616, affirmed 220 N. Y. 655, 115 N. E. 718; *Strauss v. Turck, post,* p. 586, 222 N. W. 811, decided herewith.

When the lessor accepted the premises after the lessee's default, it did not accept the same as an ultimate surrender so as to release the defendants from further liability, but under authority granted in the lease, pursuant to which the defendants would still be liable for future rents until the end of the term.

*By the Court.*—The original opinion is withdrawn, and the judgment of the lower court is reversed and the cause is remanded with directions that the plaintiff file a supplemental complaint so as to include all of the damages, if any, up to the end of the term, the entire term having in the meantime elapsed, and that further proceedings be had in accordance with law.