Ross and others, Respondents, v. SMIGELSKI, Appellant.

*No. 67. Argued March 4, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 243.)

186

For the appellant there was a brief by *Robert J. Choinski* of Hales Corners, and oral argument by *Myron Bonk* of Racine.

For the respondents there was a brief by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack*.

HANLEY, J. The following issues are raised by the defendant:

1. Did the plaintiffs accept the surrender of the premises by reletting them;

2. Where premises have been abandoned by the lessee, may the lessor recover as damages:

(a) Rental accruing when the premises are being remodeled;

(b) Remodeling expenses incurred in adapting the premises to the requirements of the new lessee; and

(c) Reasonable attorney's fees?

3. Was the action of the plaintiffs reasonable?

The plaintiffs also request a review of the judgment. They contend that the trial court arbitrarily reduced the amount allowed for remodeling expenses from $2,509.76 (the amount spent) to $2,200. They further contend that the trial court erred in not awarding $500 for rent lost under Mr. Caturia's original lease. (It is uncontradicted that the premises originally leased by Mr. Caturia were vacant from September 1, 1967, to January 31, 1968, the last day of the trial of this action.) Plaintiffs also contend that the award for attorney's fees was inadequate.

*Acceptance of Surrender.*

Defendant cites numerous Wisconsin cases to support his statement that a reletting of premises after their abandonment by a lessee constitutes an acceptance by the landlord of a surrender of the premises and a termination of the lease. All of those citations, however, precede the decision of this court in *Selts Investment Co. v. Promoters of Federated Nations of the World* (1929), 197 Wis. 476, 220 N. W. 222, 222 N. W. 812 (on motion for rehearing). In that case the court held for the first time that a landlord had a duty to mitigate damages when a tenant abandoned the premises.

"When the lessor accepted the premises after the lessee's default, it did not accept the same as an ultimate

surrender so as to release the defendants from further liability, but under authority granted in the lease, pursuant to which the defendants would still be liable for future rents until the end of the term." *Selts Investment Co., supra,* at page 486.

Shortly thereafter the court further expanded on the landlord's rights and duties when a tenant abandoned a lease:

". . . where a tenant vacates or abandons the leased premises before the end of the term, the landlord has a right to elect to accept the surrender and terminate the lease or to enter and take possession for the purpose of mitigating the damages for which the tenant is liable because of his breach of the lease. The election to enter for the purpose of mitigating damages may be evidenced by formal notice or by other proper means constituting such unequivocal act as would amount to an election of remedies in a proper case.

"The mere entry and taking possession of the premises for the purpose of leasing the same does not constitute such an election, because it is an equivocal act,—something to be done by the landlord regardless of whether his purpose be to terminate the lease or merely to perform his legal duty to mitigate damages.

"The right to elect which course he will pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him." *Weinsklar Realty Co. v. Dooley* (1930), 200 Wis. 412, 415, 228 N. W. 515.

In this case the plaintiffs gave notice to the defendant, even before they re-entered, that their sole objective was to mitigate damages. Thus the reletting of the premises, if taken alone, was not sufficient to constitute an acceptance of the surrender of the premises.

### Rental During Remodeling.

Defendant contends that the remodeling of the leased portion of a building necessarily constitutes such control

over the premises as to amount to a retaking of exclusive possession as a matter of law. Consequently, he argues, the remodeling terminates an abandoned lease from the moment it is begun. In support of his position the defendant cites *West Concord Milling Co. v. Hosmer* (1906), 129 Wis. 8, 13, 107 N. W. 12:

". . . This court has held that 'if before the expiration of the term the lessee offers to surrender the lease, and the lessor thereupon takes exclusive possession of the premises, this amounts to a surrender and acceptance which terminates the lease.' *Kneeland v. Schmidt,* 78 Wis. 345, 47 N. W. 438."

Such a statement is undoubtedly still the law in Wisconsin.

"Under these facts we are of the view that having taken possession in an *unqualified* manner and not for the limited purpose of mitigating damages by reletting the premises plaintiff terminated her right to any rent . . . ." *Richter v. Fassett* (1948), 253 Wis. 101, 103, 33 N. W. 2d 230. (Emphasis supplied.) *See also, Galvin v. Lovell* (1950), 257 Wis. 82, 42 N. W. 2d 456.

Altering a place of business for a new tenant is not, in itself, an unequivocal act which shows that a landlord has accepted the abandoning tenant's surrender of the premises. This is especially true when, as here, the landlord specifically stated to the abandoning tenant prior to the re-entry that the alteration was being done in order to mitigate damages.

When a landlord re-enters abandoned premises in order to alter or remodel those premises for a prospective tenant (whose rental payments will mitigate damages), the possession exercised by the landlord, without more, does not constitute an acceptance of the abandoned premises. The abandoning tenant is still responsible for the rent.

*Remodeling Expenses.*

Defendant argues that, as a matter of law, a landlord may not recover remodeling or alteration expenses where premises have been abandoned unless the lease specifically provides for those damages. There was no *specific* provision in this lease which permitted the recovery of alteration expenses in the case of default.[2]

Although it has never been specifically decided by this court, it seems that a landlord has the same duty to mitigate damages as any other party to a contract in case of a default. The cases which discuss the type of damages available where leased premises are abandoned are relatively few. When damages are discussed at all, the usual rule is that:

". . . Plaintiff's loss, if any, was the difference between what she received from the defendant prior to his default and what she would have received had defendant held the premises and paid rent for one year, minus, of course, any sums received by plaintiff upon a reletting to mitigate damages." *Richter v. Fassett, supra,* at page 104.

It seems that the landlord's obligation to mitigate damages exists free and clear of any clause permitting a

---

[2] The following provisions of the lease would appear to have some significance but the plaintiffs have *not* contended that these lease provisions entitled them to recover the alteration expenses:

"That if the Lessee shall abandon or vacate said premises before the expiration of said term, the Lessor shall be at liberty, at his option, to re-let the same and apply the money derived from such re-letting to the rent due or to become due on this lease, and the Lessee shall remain liable for any deficiency and agrees to pay the same.

". . .

"And the Lessee further covenants and agrees to pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by the Lessor in enforcing the covenants and agreements of this lease."

reletting of the premises in the lease. That specific question has never been decided by this court. However, most of the leases considered by this court contained a clause which permitted a reletting of the premises at the option of the landlord. This court held in *Selts Investment Co. v. Promoters of Federated Nations of the World* (on motion for rehearing), *supra*, that a landlord had an *obligation* to mitigate damages even though the lease provision made such action optional.

When contracts other than leases are breached, the injured party always has a duty to mitigate damages.

"One injured by the wrongful or negligent act of another may recover, as part of his damages, expenses incurred in the exercise of reasonable diligence to prevent or to minimize the damage caused by the wrongful act of the defendant. Thus, in the case of a breach of contract, expenditures actually made by the nondefaulting party as a reasonable effort to minimize the losses may be recovered as a part of his damages." 22 Am. Jur. 2d, *Damages*, pp. 238, 239, sec. 169.

The court should also consider the rule of damages applicable when a landlord fails to deliver up some premises to a tenant who has signed a lease.

". . . In any case of a breach of contract the party injured should use reasonable diligence and make all reasonable effort to reduce to a minimum the damages resulting from such breach. The necessary expenses incurred by him in so doing may be recovered in an action for such breach. . . . Under this rule, when the plaintiff was informed that the defendant could not give him possession of the store as he had covenanted to do . . . it became his duty to use all reasonable efforts to procure another suitable place in which to carry on his business, if the damages which otherwise would result from the breach of the defendant's covenant would be thereby diminished." *Poposkey v. Munkwitz* (1887), 68 Wis. 322, 331, 332, 32 N. W. 35.

The right to recover expenses incurred in mitigating damages does not arise from any provision actually in

the lease or implied to be in the lease. It arises as a result of the duty to mitigate damages which likewise is independent of the lease.

We hold that a landlord is entitled to recover reasonable remodeling or alteration expenses which are actually incurred in mitigating the damages which result when a tenant abandons his lease.

*Reasonable Attorney's Fees.*

The lease in this case provides that the lessee

". . . covenants and agrees to pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by the Lessor in enforcing the *covenants and agreements of this lease.*" (Emphasis supplied.)

Defendant argues that there is no covenant in the lease which entitles the landlord to anything other than back rent. Thus the attorney's fees allowed should be based strictly on the back rent recovered and not on any expenses recovered.

". . . the law does not generally recognize attorney's fees as recoverable unless authorized by statute or contract . . . ." *Widemshek v. Fale* (1962), 17 Wis. 2d 337, 342, 117 N. W. 2d 275.

Under defendant's argument, the landlord here would be entitled to his actual attorney's fees when he brings an action for rent. However, by performing his legally imposed duty to mitigate damages, the landlord somehow loses his right to recover his attorney's fees.

Since the law imposes the duty on the landlord to mitigate damages, the law should also protect the landlord's contractual right to recover his attorney's fees. Where reasonable expenses are incurred in mitigating damages, and where it is necessary to commence legal proceedings to recover those expenses, the attorney's fees should be

a proper item of damages if the landlord would have been entitled to recover his attorney's fees in an action for the rent.

### *Was Plaintiffs' Action Reasonable?*

We have determined the plaintiffs' duty and rights under the circumstances. It is now necessary to determine whether the expenses involved here were reasonable. If they were not reasonable, or if the alterations were made to benefit the plaintiffs, then the expenses are not recoverable.

It is undisputed that the charges incurred for the remodeling work which was done were reasonable. It is also undisputed that the new tenant would not have entered into the lease unless these alterations had been accomplished. However, the defendant contends that the remodeling was so extensive and so expensive that it constituted a retaking of possession by the plaintiffs and a termination of the lease under the facts of this case.

In the first instance it must be pointed out that the trial court determined that the plaintiffs' action was reasonable under the circumstances of this case.

". . . the Court is of the opinion that . . . taking all of the testimony and surrounding facts and circumstances into consideration, including the prior listings and attempts to sublet the premises and, further, and most important, the payment by the defendant through all the prior months and the vacancy that existed, the plaintiff was justified in leasing the premises to the new tenant . . . ."

Although this portion of the trial court's opinion erroneously is set out as a conclusion of law, it is really a finding of fact and it should not be disturbed on appeal unless it is against the great weight and clear preponderance of the evidence. *Estate of Erbach* (1969), 41 Wis.

2d 335, 164 N. W. 2d 238; *Schroedel Corp. v. State Highway Comm.* (1968), 38 Wis. 2d 424, 157 N. W. 2d 562.

In order to evaluate exactly what happened in this case, it is necessary to review the arrangement entered into by the plaintiffs on a step-by-step basis. As of September 1, 1967, the lease with the defendant was still binding for fifty-four months. The defendant's total exposure was $8,640. To mitigate damages the plaintiffs spent $2,509.76. At that point the total potential benefit to defendant was ($8,640 minus $2,509.76) $6,130.24. To get Mr. Caturia to move into the new quarters, the plaintiffs had to cancel his present lease which still ran from September 1, 1967, to June 9, 1969. Plaintiffs intended to hold the defendant liable for any deficiency in rent unless those quarters were re-rented. That gave defendant an exposure of $100 per month for twenty-one months. That further reduced the potential benefit of the mitigation arrangement from $6,130.24 to ($6,130.24 minus $2,100) $4,030.24. In addition the new lease to Mr. Caturia expired on August 30, 1971. Thus the defendant still had an exposure of six months at $160 per month after Mr. Caturia's lease expired. This means that the total benefit to the defendant of the mitigation arrangement was ($4,030.24 minus $960) $3,070.24, and that is not even computing the present value of the money which the defendant would have to pay immediately for the alteration expenses.

In short, the defendant benefited very little from the mitigation arrangement.

On the other hand, consider the plaintiffs' position. If the defendant had not defaulted, they would have received $160 per month for fifty-four more months. As a part of their own case, plaintiffs proved that the premises in question would have been difficult, if not impossible, to rent. However, after altering the premises, they were rented immediately for a monthly rental in excess of that called for in the defendant's lease.

Giving consideration to the factors set out above, it appears to us that the arrangement was entered into for the benefit of the plaintiffs.

This case is somewhat similar to *Perry v. Wilson Brothers, Inc.* (1927), 260 Mass. 519, 521, 522, 157 N. E. 579:

"There was no dispute that the terms of the lease were broken and that the lessor rightfully reentered and determined it; nor that he suffered certain losses through inability to obtain as great rent during parts of the remainder of the term, and incurred certain expenses in connection with reletting for repairs and changes made by him. No question was raised of the good faith of the lessor, nor of the exercise of good judgment in the extent or cost of the repairs and changes.

". . .

"We find no error in the refusal to permit recovery for the amount expended for putting in a new store front at 6 Tremont Street. Undoubtedly the expense of changes and alterations reasonably necessary in order to obtain or to retain an occupant at a proper rent may be charged to the original lessee under a covenant like that in question. . . . But a change so substantial goes beyond the line of proper charges. Although ordinarily the question of the propriety of the change and of the expenditure for it is matter for a jury, we think the ruling here made was right. The change was a permanent alteration in the building resulting in benefit to the owner rather than a repair or temporary alteration for a tenant's use."

### Conclusion.

We conclude that the trial court's finding that the plaintiffs' action was reasonable under the circumstances is not supported by the great weight and clear preponderance of the evidence. We hold that the extensive alterations undertaken in this case were unreasonable, that they were done primarily for the benefit of the plaintiffs and that the plaintiffs' action constituted a retaking of possession of the premises as of August 1, 1967. The re-

taking terminated the defendant's obligations under the lease as of August 1, 1967.

Having so concluded, it is not necessary to decide whether the trial court arbitrarily reduced the alteration expenses or whether the amount allowed for attorney's fees was too low. Likewise it is unnecessary to decide whether the defendant would have been obligated to pay the rental due under Mr. Caturia's first lease until those premises could be relet.

The plaintiffs are entitled to judgment for the unpaid rent from April 1, 1967, to August 31, 1967, at the rental of $160 per month. In addition to the rental, the plaintiffs are entitled to reasonable attorney's fees pursuant to the lease agreement. The trial court awarded attorney's fees in the sum of $800, based on the action which included the recovery of $2,200 for remodeling expenses. We think a reasonable attorney fee must be based upon the recovery of the rent due in the sum of $800. A reasonable attorney fee for collection of the rent due should not exceed one third of the recovery. On that basis a fee of $266 is a reasonable fee.

The plaintiffs' judgment should be computed by subtracting the $2,200 item allowed for remodeling expenses and by subtracting the difference of $534 in the allowance of attorney's fees.

*By the Court.*—The judgment is modified to reduce the judgment to $1,167.77 and, as modified, affirmed, with costs allowed to the appellant.