In re AIRPORT ASSOCIATES, Debtor.

AIRPORT ASSOCIATES, Plaintiff,

v.

HAWAII AIR–GUNNERY, INC., and Marcus H. Asch, Defendants.

Bankruptcy No. 77–00339(5).

United States Bankruptcy Court, D. Hawaii.

Feb. 13, 1981.

Jerrold Y. Chun, Honolulu, Hawaii, for plaintiff.

Philip D. Bogetto, Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

On December 11, 1980, Marcus H. Asch, hereafter "Asch", filed his Motion to Amend Findings of Fact and Conclusions of Law and To Amend the Judgment filed December 3, 1980, or In the Alternative, Motion for New Trial. The matter was heard before the undersigned Judge on January 5, 1981. Philip D. Bogetto, Esq. appeared on behalf of Asch, and Jerrold Y. Chun, Esq. appeared on behalf of Airport Associates.

In his memorandum, Asch contends that because Airport Associates has removed trade fixtures and remodeled the leased premises, said premises can no longer be used as an air gunnery range, the original purpose for which it was leased. Consequently, Asch contends that there was a surrender of the leased premises by the tenant, Hawaii Air-Gunnery, Inc., and an acceptance of such surrender by the landlord, Airport Associates.

On the other hand, Airport Associates contends that, under the terms of the Lease and under the law, Airport Associates as the landlord, is under an obligation to mitigate the damages of the tenant, therefore, when it removed the trade fixtures and remodeled the premises to enable it to sublet it to a new tenant, it was merely fulfilling its obligations under the law.

Based upon the memoranda and records filed herein and arguments of counsel, the Court hereby makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On December 1, 1976, Airport Associates and Hawaii Air-Gunnery, Inc., hereafter "Air-Gunnery", entered into five-year lease commencing on January 1, 1977. Performance of said lease on the part of Air-Gunnery was guaranteed by Asch.

2. A pertinent provision of the lease provided as follows:

DEFAULT AND RE-ENTRY

If there shall be an event of default, Owner shall give notice of such event of default to Tenant, and if Tenant shall fail to cure such event of default within ten (10) days after the date of receipt of such notice Owner may at its option terminate this lease and re-enter and take possession of Premises using all necessary force to do so; provided, however, that if the nature of such default other than for non-payment of rent is such that the same cannot reasonably be cured within such ten-day period, Tenant shall not be deemed to be in default if Tenant shall within such period commence such cure and thereafter diligently prosecute the same to completion. *Notwithstanding such retaking of possession by Owner, Tenant's liability for the rent provided herein shall not be extinguished for the balance of the term of this lease. Upon such re-entry, Owner may elect either (i) to terminate this lease, in which event Tenant shall immediately pay to Owner a sum equal to that by which the then cash value of the total rent reserved under this lease for the balance of the lease term exceeds the then reasonable rental value of Premises for the balance of the lease term; or (ii) without terminating this lease, to relet all or any part of Premises as the agent of and for the account of Tenant upon such terms and conditions as Owner may deem advisable, in which event the rents received on such reletting shall be applied first to the expenses of reletting and collection, including necessary renovation and alteration of Premises*, reasonable attorney's fees and real estate commissions paid, and thereafter to payment of all sums due or to become due Owner hereunder, and if a sufficient sum shall not be thus realized to pay such sums and other charges, Tenant shall pay Owner any deficiency monthly, and Owner may bring an action therefor as such monthly deficiency shall arise. (Emphasis added).

3. By letter dated September 13, 1979, Air-Gunnery informed Airport Associates that it was abandoning the premises stating the following:

Effective with this notice, we are hereby returning to the Airport Center our space. *We expect you to use your best efforts to find a tenant for the space.*

\* \* \* \* \* \*

The furnishings that remain on the premises can be moved at any time, if a new tenant has no use for them, or we will accept any reasonable offer for them. (Emphasis added.)

4. This letter emphasizes two important points: First, Air-Gunnery informed Airport Associates that Airport Associates was under a duty to mitigate damages by finding a new tenant; second, Air-Gunnery recognized that a new tenant might not need the existing furnishings since the new tenant might not be engaged in the air gunnery range business.

5. On September 28, 1979, Airport Associates filed a complaint with this court seeking relief with respect to Air-Gunnery's abandonment of the premises. Said complaint requested relief including September 1979 rent and other rent that may accrue after September 1979. The request for relief stated that Airport Associates did not accept surrender of the premises; instead, it is clear that Airport Associates communicated to Air-Gunnery its intent to hold Air-Gunnery responsible for future rent although Air-Gunnery had abandoned the premises.

6. Air-Gunnery was in the business of running an air gunnery range and had arranged its premises as such. Due to its nature, improvements for an air gunnery range are not conducive to other businesses. In order to relet the premises and mitigate Air-Gunnery's damages as requested by Air-Gunnery itself, Airport Associates was compelled to modify the premises so as to facilitate obtaining a new tenant.

7. Under the terms of the lease, Air-Gunnery and Asch agreed that, upon default of performance by Air-Gunnery, Air-

port Associates could relet all or any portion of the premises and renovate or alter the premises to enable it to relet the premises at the expense of Air-Gunnery. As was demonstrated at the trial on this matter, Airport Associates tried, albeit unsuccessfully, to relet the premises to Rainbow Wallets & PSI World, neither of which were in the air gunnery range business. In November 1980, after the trial, Air-Gunnery was successful in reletting a portion of the premises to DFI Financial, Inc. which also is not in the air gunnery business. It was necessary for Airport Associates to remodel the premises in order to relet the premises to DFI Financial, Inc. and mitigate damages.

8. These Findings of Fact, insofar as they are Conclusions of Law, are incorporated by reference in the Conclusions of Law as hereafter stated.

## CONCLUSIONS OF LAW

1. If a tenant completely abandons leased premises before the expiration of the term, the landlord may elect to pursue certain courses: (1) he may at once re-enter and terminate the lease on the theory of a forfeiture or of an acceptance of an offer to surrender, and recover rent due up to the time of abandonment; (2) he may suffer the premises to remain vacant and sue on the contract for the entire rent; (3) he may re-enter to keep the premises in repair or (4) he may relet the premises. 49 Am.Jur.2d Landlord and Tenant § 1094. If the landlord re-enters to relet them, whether the re-entry and reletting constitutes an acceptance of the abandonment, thus constituting a surrender, depends upon the circumstances and the intent of the parties. 49 Am.Jur.2d Landlord and Tenant § 1094.

2. The burden of proving a surrender is upon the party alleging it. Thus, where a tenant relies on an alleged surrender to relieve him of liability for subsequently accruing rents, the burden is upon him to prove that the landlord intended to accept the abandonment as a surrender. *Yee v. Okamoto*, 45 Hawaii 445, 370 P.2d 463 (1962).

3. In determining whether or not the landlord intended to accept the abandonment as a surrender, the trier of fact must take into account whether or not the landlord was under a duty to relet, i. e., a duty to mitigate, especially if there is a provision in the lease agreement regarding reletting the premises in the event of default by the Tenant. 49 Am.Jur.2d Landlord and Tenant § 1100. In the instant case: (1) under Hawaii law it is well known that Airport Associates was under a duty to mitigate Air-Gunnery's damages; (2) Air-Gunnery through its letter to Airport Associates dated September 13, 1979, informed Airport Associates that Airport Associates was under a duty to mitigate; and (3) the lease agreement provided for the reletting of the premises and the application of such rents to tenant's account. Under these circumstances, it is clear that Air-Gunnery has not met its burden of proving that Airport Associates intended to release Air-Gunnery of any further liability.

4. Air-Gunnery has, however, raised the issue of Airport Associates modifying the subject premises from an air gunnery range to space more conducive to regular business offices. Under Air-Gunnery's analysis, Airport Associates is under a duty to relet (*see* Hawaii Air-Gunnery's Sept. 13, 1979 letter) but if Airport Associates relets to someone who requires that the premises be remodeled from an air gunnery range, then Air-Gunnery is not responsible for any future rent since Airport Associates' actions constitute an acceptance of the surrender of the premises.

5. Air-Gunnery's position is contrary to the law. Where a landlord re-enters abandoned premises in order to alter or remodel them for a prospective tenant, whose rental payment will mitigate damages, the possession exercised by the landlord, without more, does not constitute an acceptance of the abandoned premises; the abandoning tenant is still responsible for the rent. *Ross v. Smigelski*, 42 Wis.2d 185, 166 N.W.2d 243 (1969).

6. *In Ross v. Smigelski, supra*, the tenant was an osteopathic doctor whose lease ran until March 1, 1972. In November,

1966, he removed his medical practice from the premises but continued his rental payments through March 1967. During January and February of 1967, the doctor attempted to sublet his office but without success.

7. The rent for April, May and June of 1967 was not paid. On July 5, 1967, the landlord commenced an action against the doctor to recover the unpaid rent. On July 24, 1967, the doctor returned his key to the landlord.

8. On July 27, 1967, the landlord informed the doctor that he intended to lease the abandoned premises to a tenant named Caturia, but that Caturia would not take over the premises unless certain alterations were made to the premises. The purpose of these alterations was to change the doctors' office into a sporting goods store. The remodeling was completed and the lease with the Caturia sporting goods store commenced on September 1, 1967.

9. In his suit, the landlord sought to recover as damages, among other items, rent from April through August, 1967. The trial court awarded the landlord rent from April through August 1967. Although the doctor appealed on several grounds, this ruling raised the following issue:

> Where premises have been abandoned by the lessee, may the lessor recover as damages rental accruing when the premises are being remodeled?

The doctor contended that the remodeling of the leased portion of the building constituted such control over the premises as to amount to a retaking of exclusive possession as a matter of law. The doctor argued that remodeling terminates an abandoned lease from the moment it begins. The court rejected the doctor's argument and stated the following:

> When a landlord re-enters abandoned premises in order to alter or remodel those premises for a prospective tenant (whose rental payments will mitigate damages), the possession exercised by the landlords, without more, does not constitute an acceptance of the abandoned premises. The abandoning tenant is still responsible for the rent.

*Id.* at 166 N.W.2d 248.

10. In the instant case, Airport Associates did change the configuration, or the form and shape, of the leased premises when it remodeled the premises to sublet a portion to DFI Financial, Inc. However, such remodeling was necessary to relet the premises and mitigate damages. Under the lease provisions, Air-Gunnery and Asch had agreed that upon default of Air-Gunnery, Airport Associates could remodel the premises to relet all or any portion thereof in order to mitigate damages.

11. In altering the premises and subletting a portion thereof, even if the premises could no longer be used for an air gunnery range, Airport Associates was merely complying with the terms of the lease executed by Air-Gunnery and guaranteed by Asch. Thus, Airport Associates' conduct is not sufficient to find an acceptance of the surrender of the premises.

12. Since no new matter has been offered by Asch, the Motion to Amend the Findings of Fact and Conclusions of Law is hereby denied. Furthermore, the Motion for New Trial is also denied.

An Order will be signed upon presentment.